## E. R. LOWE V. STATE

No. 28,283. June 6, 1956.
Appellant's Motion for Rehearing Overruled
October 10, 1956.
Appellant's Second Motion for Rehearing Overruled.
(Without Written Opinion) November 7, 1956.

*McDonald & Anderson,* by *C. C. McDonald,* Wichita Falls, for appellant.

*Royce Adkins,* District Attorney, Haskell, and *Leon Douglas,* State's Attorney, Austin, for the state.

BELCHER, Judge.

The conviction is for burglary; the punishment, two years in the penitentiary.

Durene Boone who resided on a farm 2½ miles from the town of Haskell with her husband, Nord Boone, and their daughter, Jo Nord Boone, age 11, was called as a state witness by the state. She testified that about 3 P.M., June 17, 1955, she heard the sound of a car horn, went to the back door, found the screen door closed and locked and the wooden door with three glass panels open, and saw her father, the appellant, get out of the car with a shotgun about twelve steps away and start running toward the house. She told her father she didn't want to talk with him and not to come in the house, and he said, "God damn you, you have done your last thing; I'm going to get you this time," then she slammed the wooden door closed and locked it. She further testified that she ran to the bedroom and with her daughter went into the bathroom, locked the door and got in the bath tub, and while in the bathroom she heard glass breaking and someone walking on the kitchen, den, and hall floors, and the appellant repeating over and over, "You sorry son-of-a-bitch, you've done your last thing; I'm going to get you this time." She plead with appellant through the door to do what he liked with her, but not to hurt Jo, during which time she put Jo out the window and told her to go to the barn, heard the gun discharged in the house, and then she left through the bathroom window and ran to the barn and on to a neighbor's home where she telephoned her husband and the officers. Appellant soon left her house and she returned as her husband and the officers arrived. Upon her return she found the back screen door pulled loose from the frame with two holes in it and the lower glass panel of the wooden door broken and broken glass on the kitchen floor; and the gun had been discharged into the vent of the attic fan in the hall in front of the bathroom door. She also testified that her father had not been in her house nor had she been in his since 1953.

Nord Boone, who was not at home at the time of the commission of the offense here alleged, testified in substance as

his wife as to the condition of the doors, the broken glass on the floor, and the vent. He further testified that he found a 12 gauge shotgun shell with shot size No. 2 in the flower bed by the back porch, and that he did not have any No. 2, 12 gauge shotgun shells on his place. He testified also that the appellant did not have consent to open the doors and enter his house.

Deputy Sheriff Alvis testified that the appellant had freshly congealed blood on the back of his hand when taken into custody.

Sheriff Pennington's testimony corroborated that of Durene Boone as to the condition of the doors and the glass on the floor at the Boone home. He further testified that he found some shot from a shotgun shell on the floor in the hall; that he went with the appellant to his house where he handed him a shotgun loaded with three 12 gauge shotgun shells containing No. 2 shot; and that the markings on these three shells were the same as those on the shell found at the Boone residence.

B. T. Gordon testified that the appellant while on a trip to Marlin in May, 1954, and when referring to Durene Boone, said, "He just told me and the Sheriff at that time that he was going to kill those two."

Appellant while testifying in his own behalf stated that he and his wife were separated and had made a property settlement, and that on the occasion in question he went to Durene Boone's home in response to a telephone call from his daughter asking him to come and assist her in writing a letter to her mother about the insurance on a building belonging to her which had burned. When he arrived he saw Durene standing in the door with a shotgun drawn on him; he dodged to one side, told her to drop the gun, and tried to reach her so he could take the gun from her hand, and as she moved back he heard the glass in the door break; and she dropped the gun in the hall as she ran into the bathroom. He further testified that he picked up the gun, learned that it was his gun which was an automatic shotgun, and while unloading it with the barrel pointed up it was accidentally discharged, the shot striking the vent in the ceiling. He stated that he made no attempt to break into the bathroom. He then returned to his home in Haskell and had gone across the street to his son's home to tell him what happened at Durene's when he was arrested.

In the state's rebuttal Durene Boone testified that she did not request her father to come to her home and assist her in

writing a letter to her mother, and she also denied that her father's shotgun was in her house before he came.

The testimony shows that the relationship between the appellant and Durene Boone had not been pleasant and friendly for about two years prior to the date of the alleged offense.

Appellant moved to quash the indictment on the ground that the offense attempted to be charged was not set forth in plain and intelligible words in that it did not allege that the appellant broke and entered said house with the intent then and there to make an assault upon Durene Boone with the intent then and there with malice aforethought to kill Durene Boone by shooting her with a gun because the assault is an essential element of the offense intended to be committed and must be alleged.

The instant indictment charged that "* * * in the daytime * * * did, then and there, by force, threats and fraud, break and enter a house there situate and occupied and controlled by Nord Boone, with the intent then and there with malice aforethought to murder Durene Boone by shooting her with a shotgun."

Art. 1390, Vernon's Ann. P.C., provides:

"He is also guilty of burglary who, with intent to commit a felony or theft, by breaking, enters a house in the daytime."

The intent with which the entrance was made is the essential element of the offense of burglary. The intent must be to commit a felony or theft which intent must be expressly averred. However, it is not material whether the intent is carried into effect. The particular offense intended to be committed must be described in the indictment.

Appellant's contention, as we understand it, is that the indictment attempts to charge the offense of assault with intent to murder after charging the breaking and entry of the house. If the offense of assault with intent to murder was the felony intended to be alleged in order to charge the offense of burglary, it would be necessary to allege an assault as it is an essential element of said offense.

The particular felony offense here described in order for the indictment to charge burglary was that of murder with

malice aforethought. In connection therewith it was alleged that the appellant broke and entered said house with the intent to commit said offense. Hence the allegation of appellant's intent to commit the particular offense of murder with malice aforethought by the use of a shotgun at the time of the breaking and entering of said house was sufficient to charge the offense of burglary. 7 Tex. Jur. 811, Sec. 59; Stinnett v. State, 32 Tex. Cr. R. 526, 24 S.W. 908.

Appellant complains of certain testimony offered to impeach him after he had denied on cross-examination that he told Billy Tom Gordon in May, 1954, that he was going to kill Durene and Nord. Following his denial Gordon was called by the state and asked if the appellant in May, 1954, made any threats against Durene Boone to him, and to which he answered: "Well, I just heard him say — he just told me and the sheriff at that time that he was going to kill those two." Appellant objected to such testimony on the ground that it was immaterial, prejudicial, too remote and injected an extraneous matter into the case.

The commisison of the offense here charged against the appellant was in issue and evidence of threats made by him approximately a year before showing ill will and malice toward the injured party, although also admissible for impeachment purposes, was admissible as original evidence against him. 18 Tex. Jur. 38, Sec. 22; 22 Tex. Jur. 770, Sec. 191; Branch's Ann. P.C. 1166, Sec. 2072; Owen v. State, 52 Tex. Cr. R. 65, 105 S.W. 513; Harrelson v. State, 60 Tex. Cr. R. 534, 132 S.W. 783.

The complaint of the failure of the trial court to charge the jury that if the entry of the house was made by the appellant in the daytime through an open door to return a verdict of not guilty cannot be sustained as there was no evidence authorizing the submission of such instruction.

We find the evidence sufficient to support the conviction, and no reversible error appearing the judgment is affirmed.

Opinion approved by the Court.

ON APPELLANT'S MOTION FOR REHEARING

WOODLEY, Judge.

Appellant urges that because of the failure of the state to

call his eleven-year-old granddaughter as a witness, or to account for its failure to do so, this court should treat the case as one evidencing a reasonable doubt as to the sufficiency of the evidence under the rule stated by Presiding Judge Morrison in Ramirez v. State, (page 110 this volume), 289 S.W. 2d 251, 261, decided since the original submission of this appeal.

While it is most unusual for a daughter to furnish the evidence to convict her father for an unlawful entry into her home, or for a father to entertain an intent to murder his daughter, the testimony of the prosecuting witness, if true, was sufficient to support the jury's verdict convicting appellant of burglary with intent to commit murder. Proof of no essential element of the offense charged was missing and the state did not rely upon circumstantial evidence to prove any element of the offense.

Reference to the authorities cited by Judge Morrison in the Ramirez case, especially 18 Tex. Jur. p. 440, Evidence Criminal Cases, Sec. 318, will reveal that the rule regarding the failure of the state to introduce or satisfactorily account for its failure to introduce testimony available to the state, which would have thrown additional light on the facts, is a rule applicable to circumstantial evidence, and is applicable especially where testimony to show the basic facts is absent. The Ramirez case was itself submitted to the jury on the law of circumstantial evidence.

We would not be justified in holding that the testimony of the daughter of appellant was not competent evidence. It was for the jury, and not for this court, to determine whether her testimony was weak or strong, or whether it was true or false.

The state produced an eye witness to the transaction. It was not under the necessity of calling another to corroborate her testimony.

We observe further that appellant testified that he did not see the child and the prosecuting witness testified that she was in another room when appellant broke in.

We remain convinced that the testimony, viewed from the standpoint of the state, is sufficient to sustain the jury's verdict and that this court should not disturb its findings.

Appellant's motion for rehearing is overruled.