Lernard DeVAUGHN, Appellant,

v.

The STATE of Texas, Appellee.

No. 1062–84.

Court of Criminal Appeals of Texas, En Banc.

April 13, 1988.

---

David K. Chapman (court appointed), Fort Worth, Mark Stevens, San Antonio, for appellant.

Sam D. Millsap, Jr., Dist. Atty., and Edwin E. Springer, Edward Coffey and Edward F. Shaughnessy, III, Asst. Dist. Attys., San Antonio, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

CLINTON, Judge.

Following his plea of not guilty, a jury convicted appellant of the first degree felony offense of burglary of a habitation, as proscribed by V.T.C.A. Penal Code, § 30.02(a)(3). Punishment was assessed by the trial court at ten years confinement in the Texas Department of Corrections. The Court of Appeals for the Fourth Supreme Judicial District reversed appellant's conviction and remanded the cause to the trial court. *DeVaughn v. State,* 678 S.W.2d 143 (Tex.App.—San Antonio 1984).

The State petitioned this Court for discretionary review of the holding by the court of appeals that, upon timely request for additional specificity by means of a motion to quash, an indictment for burglary which alleges that the accused attempted to commit theft and actually committed theft must provide a description of the item or items which were taken and state the name of the owner of those items. Considering this an important issue of state law which has not been, but should be, settled by this Court, we granted review. Tex.R. App.P., Rule 200(c)(2).

The indictment in appellant's case read, in pertinent part, as follows:

"... on or about the 7th day of August, A.D., 1982, Lernard DeVaughn did then and there intentionally and knowingly enter a habitation which is located in the

general vicinity of the 7400 block of Hidden Oak, Live Oak, Bexar County, Texas, and therein *attempted to commit and committed theft*, without the effective consent of Joyce Ernest, the owner of said habitation...." [1]

Appellant timely filed a motion to quash, which contained the following in Paragraph III:

"The defendant takes exception to the indictment in this cause in that the document fails to allege and therefore fails to inform the defendant as to the elements of theft and attempted theft in that there is no allegation of:

(a) The property which was stolen or attempted to be stolen.

(c) [sic] The owner of the stolen property or the property which was attempted to be stolen.

(d) That the said property was taken without the effective consent of the owner of the property.

(e) The manner in which such consent was not effective as to the owner of the property.

(f) That such property was appropriated by the defendant with the intent to deprive the owner of such property.

(g) The value of the property which was stolen or attempted to be stolen.

(h) That the same was committed with a culpable mental state."

The court of appeals concluded that "certain factual elaborations sought by (appellant's) motion to quash were information to which he was entitled upon his timely requests therefor." *DeVaughn v. State,* supra at 149. Specifically, the court held that appellant was entitled to "notice as to

which property was allegedly taken or attempted to be taken" and to "be given the name of the individual from whom he appropriated or attempted to appropriate the property." *Id.* The court concluded that the remaining items in appellant's motion to quash were "not matters of adequate notice and would not assist (appellant) as a bar to a subsequent prosecution of the same offense." *Id.* In so doing, the court of appeals quoted extensively from this Court's opinion on original submission in *Ortega v. State,* 668 S.W.2d 701 (Tex.Cr. App.1983), an opinion which the State describes in its brief in this cause as "dicta."

The court of appeals also held that appellant was entitled to the information above under the rationale that appellant's motion to quash "entitled him to the allegation of facts sufficient to bar a subsequent prosecution for the same offense." *DeVaughn v. State,* supra at 151. The State has taken exception with these holdings in its petition for discretionary review.

## I. Burglary Generally

There are three distinct ways in which one may commit the offense of burglary under the present version of the Penal Code.[2] First the offense may be committed by intentionally or knowingly [3] entering a building or habitation not then open to the public, without the effective consent of the owner and with the intent to commit a felony or theft. V.T.C.A. Penal Code, § 30.02(a)(1); *Gonzalez v. State,* 517 S.W. 2d 785, 786 (Tex.Cr.App.1975). Second, one may commit burglary by intentionally or knowingly remaining concealed in a build-

---

1. All emphasis supplied by the writer of this opinion, unless otherwise noted.

2. V.T.C.A. Penal Code, § 30.02 provides in pertinent part as follows:

"(a) A person commits an offense if, without the effective consent of the owner, he:

(1) enters a habitation, or a building (or any portion of a building) not then open to the public, with intent to commit a felony or theft; or

(2) remains concealed, with intent to commit a felony or theft, in a building or habitation; or

(3) enters a building or habitation and commits or attempts to commit a felony or theft."

3. Although no general culpable mental state is set forth in the statute, it is settled that the entry must be intentional or knowing. V.T.C.A. Penal Code, § 6.02(b), (c); *Baldwin v. State,* 538 S.W.2d 109, 110–12 (Tex.Cr.App.1976). Because this general culpable mental state is subsumed into the specific intent required in the statute, an indictment alleging an offense under § 30.02(a)(1) and (2), supra, is sufficient if it alleges only that the entry was made "with the intent to commit a felony or theft." *Davila v. State,* 547 S.W.2d 606, 608 (Tex.Cr.App.1977).

ing or habitation, without the effective consent of the owner, and with the intent to commit a felony or theft. V.T.C.A. Penal Code, § 30.02(a)(2); *Day v. State,* 532 S.W.2d 302, 305 (Tex.Cr.App.1976). Finally, one may commit burglary by intentionally and knowingly [4] entering a building or habitation, without the effective consent of the owner, and committing or attempting to commit a felony or theft. V.T.C.A. Penal Code, § 30.02(a)(3); *Day v. State,* supra; *Davila v. State,* 547 S.W.2d 606, 608 (Tex.Cr.App.1977). See also, *Robles v. State,* 664 S.W.2d 91, 94 (Tex.Cr.App.1984). An indictment that fails to allege at least one of these theories is fundamentally defective. *Ex parte Oliver,* 703 S.W.2d 205, 206 n. 1 (Tex.Cr.App.1986).

It is well settled that the intent to commit a felony or theft must exist at the moment of the entry or there is no offense under § 30.02(a)(1), supra; *Lewis v. State,* 715 S.W.2d 655, 656 (Tex.Cr.App.1986). It is equally settled that the offense is complete upon the entry; a completed felony or theft is unnecessary. *Lewis v. State,* supra at 657; *Robles v. State,* supra at 95 (Clinton, J., concurring). Proof of the intent to commit either theft or a felony was, and is, a necessary element in the State's case. *State v. Robertson,* 32 Tex. 159 (1869); *Collins v. State,* 20 Tex.Crim. 197 (1886); *Polk v. State,* 60 Tex.Crim. 462, 132 S.W. 134 (1910); *Farris v. State,* 155 Tex. Crim. 261, 233 S.W.2d 856 (1950); *Lowe v. State,* 163 Tex.Crim. 578, 294 S.W.2d 394 (1956); *Greer v. State,* 437 S.W.2d 558 (Tex.Cr.App.1969); *Ex parte Rogers,* 519 S.W.2d 861 (Tex.Cr.App.1975). The same is true of burglary under § 30.02(a)(2), supra.

Thus, the attempted or completed theft or felony required by § 30.02(a)(3), supra, merely supplants the specific intent which accompanies entry in §§ 30.02(a)(1) and (2), supra. Indeed, the Practice Commentary accompanying § 30.02(a)(3), supra, provides in pertinent part as follows:

"Section 30.02(a)(3) includes as burglary the conduct of one who enters without effective consent but, lacking intent to commit any crime upon his entry, subsequently forms that intent and commits or attempts a felony or theft. *This provision dispenses with the need to prove intent at the time of the entry when the actor is caught in the act.*"

Practice Commentary, V.T.C.A. Penal Code, § 30.02, p. 144. The gravamen of the offense of burglary clearly remains entry of a building or habitation without the effective consent of the owner, accompanied by either the required mental state, under §§ 30.02(a)(1) and (2), supra, or the further requisite acts or omissions, under § 30.02(a)(3), supra.

■ This Court has repeatedly held that an indictment for burglary as set forth in §§ 30.02(a)(1) or (2), supra, is not fatally defective because it fails to allege the owner, value, description, nature, etc., of the property which the accused allegedly intended to steal.[5] See, e.g., *Ford v. State,* 632 S.W.2d 151 (Tex.Cr.App.1982); *Traylor v. State,* 561 S.W.2d 492 (Tex.Cr.App.1978); *Davila v. State,* supra; *Faulks v. State,* 528 S.W.2d 607 (Tex.Cr.App.1975). The Court has come to the same conclusion regarding claims that failure to allege these facts in an indictment under § 30.02(a)(3), supra, constitutes *fundamental* error. *Davila v. State,* supra at 609; *Roy v. State,* 608 S.W.2d 645, 652 n. 7

---

**4.** Of course, because "intent to commit a felony or theft" is not an element of the offense proscribed by § 30.02(a)(3), supra, an indictment must allege the general culpable mental state or such indictment will be fundamentally defective. See note 3, ante; *Day v. State,* supra at 305 n. 1; *Davila v. State,* supra at 608 n. 2.

**5.** The statutory genesis for such claims is generally Article 21.09, supra, which currently provides, in pertinent part, that "[i]f known, personal property alleged in an indictment shall be identified by name, kind, number, and owner-

ship." The predecessor statute provided, in pertinent part, that "[w]hen it becomes necessary to describe property of any kind in an indictment, a general description of the same by name, kind, quality, number and ownership, if known, shall be sufficient." Ch. 722, 1965 Tex.Gen. Laws, vol. 2, 317 (amended 1975). We have held that the 1974 amendment did not increase the State's pleading requirement under the statute. *Cox v. State,* 560 S.W.2d 675, 676 (Tex.Cr. App.1978); *Welch v. State,* 543 S.W.2d 378 (Tex. Cr.App.1976).

(Tex.Cr.App.1980). However, the Court has suggested that a different conclusion may be warranted when the issue is presented in the context of the denial of a timely submitted motion to quash.[6]

## II. State's Argument

The State's primary argument[7] in this Court is that appellant's case is controlled "not by the dicta in *Ortega v. State* [668 S.W.2d 701 (Tex.Cr.App.1983)], but rather by this Court's holding in *Nichols v. State*, 494 S.W.2d 830 (Tex.Cr.App.1973)." *Nichols v. State*, supra, urged on us by the State as controlling appellant's case, is inapposite because *Nichols* involved a conviction for burglary *with intent to commit theft*, as opposed to burglary by entering and committing theft. As discussed above, the attempted or completed theft or felony, under § 30.02(a)(3), supra, supplants the intent to commit a felony or theft under §§ 30.02(a)(1) or (2), supra.

Additionally, the State invites us to seek guidance in this case from the law of motions to quash as it relates to the offense of robbery. The argument here is that robbery, as set forth in V.T.C.A. Penal Code, § 29.02, is "an assaultive offense which contains an underlying element of criminal conduct; that element is, that the assault occurred while the defendant was 'in the course of committing theft.'" The argument continues with the proposition that, if we adopted the State's interpretation of the court of appeals' opinion, an individual indicted for robbery would be entitled to notice of all of the elements of the underlying offense of theft. The State concludes its argument by noting that this Court has previously held that the elements of the underlying theft in a robbery prosecution are merely evidentiary and need not be pled, citing as authority *Hightower v. State*, 629 S.W.2d 920 (Tex.Cr.App.1981); *Hill v. State*, 568 S.W.2d 338 (Tex.Cr.App. 1978); *Davis v. State*, 532 S.W.2d 626 (Tex. Cr.App.1976).

Finally, the State urges that the law of motions to quash as it applies to capital murder is also instructive. The State submits that, if its interpretation of the court of appeals' holding in this case is adopted, an accused charged with capital murder during the commission of a felony would be entitled to force the State to plead the elements of that underlying felony. Citing *Lamb v. State*, 680 S.W.2d 11 (Tex.Cr.App. 1984) and *Hammett v. State*, 578 S.W.2d 699 (Tex.Cr.App.1979), the State notes that this Court has expressly repudiated that reasoning. We shall return to these arguments below.

6. See, e.g., *Ford v. State*, 632 S.W.2d 151, 153 (Tex.Cr.App.1982); *Ortega v. State*, 668 S.W.2d 701, 703–04 (Tex.Cr.App.1983) (Opinion on Appellant's Petition for Discretionary Review).

7. We reject as facially erroneous a portion of the reading of the court of appeals opinion suggested by the State; *viz.*, that appellant is entitled to notice of all the elements of theft, and that a conviction for burglary bars a subsequent prosecution for theft of the property stolen from the burglarized premises. This argument is premised on a misinterpretation of the holding of the court of appeals. In its brief on the merits submitted to this Court, the State contends:

"the holding of the Court of Appeals is premised on a legal fallacy. According to the Court of Appeals, an accused is entitled to notice of the elements of the completed theft in order that he could enter a plea in bar to prevent a subsequent prosecution for theft. See: Arts. 27.05, 28.13, Tex.Code Crim.Proc. Ann. (Vernon 1974). The State would urge that this holding fails to recognize the rule of law that a former conviction for burglary will not bar a subsequent prosecution for theft of

the property stolen from the burglarized premises."

We are unable to locate any language in the opinion of the court of appeals that would lead one to conclude it believed that appellant was "entitled to notice of the elements of the completed theft." Rather, we read the opinion to indicate that an accused charged by indictment with burglary under § 30.02(a)(3), supra, is entitled to notice as to the *owner of the property allegedly stolen*, and as to a *description of that property*, when such information is requested through a timely filed written motion to quash the indictment. Nor do we find language in the opinion which indicates that the court of appeals was of the opinion that conviction for *burglary* bars a subsequent prosecution for *theft* of the property stolen from the burglarized premises. Rather, we read the opinion to hold that the above described notice is necessary in order to bar a subsequent prosecution *for that same burglary*. Accordingly, the State's contentions in this regard will not be further addressed.

### III.   Notice Generally

In all criminal prosecutions an accused is guaranteed the right to demand the nature and cause of the action against him, and to have a copy thereof. Tex. Const. Art. I, § 10. This constitutional mandate requires that the charging instrument itself convey adequate notice from which the accused may prepare his defense, and the adequacy of the State's allegation must be tested by its own terms. *Adams v. State*, 707 S.W. 2d 900, 901 (Tex.Cr.App.1986), *citing, Voelkel v. State*, 501 S.W.2d 313 (Tex.Cr. App.1973). Subject to rare exceptions, an indictment which tracks the language of the penal statute will be legally sufficient and the State need not allege facts which are merely evidentiary in nature. *Moreno v. State*, 721 S.W.2d 295 (Tex.Cr.App.1986); *Beck v. State*, 682 S.W.2d 550 (Tex.Cr.App. 1985). The indictment will be read as a whole in determining whether it sufficiently charges an offense. *Dennis v. State*, 647 S.W.2d 275, 279 (Tex.Cr.App.1983); *Church v. State*, 552 S.W.2d 138, 140 (Tex. Cr.App.1977).

A motion to quash should be granted only where the language concerning the defendant's conduct is so vague or indefinite as to deny the defendant effective notice of the acts he allegedly committed. *Thomas v. State*, 621 S.W.2d 158, 163 (Tex. Cr.App.1981); *Lindsay v. State*, 588 S.W. 2d 570 (Tex.Cr.App.1979); *Cruise v. State*, 587 S.W.2d 403 (Tex.Cr.App.1979); *Haecker v. State*, 571 S.W.2d 920 (Tex.Cr.App. 1978); *Amaya v. State*, 551 S.W.2d 385 (Tex.Cr.App.1977). In the face of timely motion to quash an indictment, the indictment must allege on its face the facts necessary to show that the offense was committed, to bar a subsequent prosecution for the same offense, and to give the defendant notice of precisely what he is charged with. *American Plant Food v. State*, 508 S.W.2d 598, 603 (Tex.Cr.App. 1974), *citing, Terry v. State*, 471 S.W.2d 848, 852 (Tex.Cr.App.1971). Where the accused has raised the claim of inadequate notice by means of a timely motion to quash, this Court has held:

"The general rule is that a motion to quash will be allowed if the *facts* sought are *essential* to give notice. However, unless a fact is essential, the indictment need not plead evidence relied on by the State. *Smith v. State*, 502 S.W.2d 133 (Tex.Cr.App.1973); *Cameron v. State*, 401 S.W.2d 809 (Tex.Cr.App.1966). Moreover, when a term is defined in the statutes, it need not be further alleged in the indictment. *American Plant Food Corporation v. State*, 508 S.W.2d 598 (Tex.Cr.App.1974); *May v. State*, 618 S.W.2d 333 (Tex.Cr.App.1981)." (Emphasis in original)

*Thomas v. State*, supra at 161 (Opinion on State's Motion for Rehearing).

It is improper to look to the record of the case in order to determine whether the allegation in the charging instrument constitutes adequate notice; the information upon which the accused prepares his defense must come from the face of the charging instrument itself. *Adams v. State*, supra at 901; *Bonner v. State*, 640 S.W.2d 601 (Tex.Cr.App.1982).

In *Adams*, we indicated that claims of inadequate notice should be addressed as follows:

"The important question is whether a defendant had notice adequate to prepare his defense. The first step in answering this question is to decide whether the charging instrument failed to convey some requisite item of "notice". If sufficient notice is given, this ends our inquiry. If not, the next step is to decide whether, in the context of the case, this had an impact on the defendant's ability to prepare a defense, and, finally, how great an impact."

*Adams v. State*, supra at 903. It is to that "first step" we now turn.

If an indictment contains allegations regarding all the necessary elements of the offense, so that it is not fundamentally defective and void, and if a defendant requests additional factual information upon which to prepare a defense, a defect of form has been raised and the State may properly amend the indictment to reflect the requested information. *Janecka v. State*, 739 S.W.2d 813, 819 (Tex.Cr.App.

1987), *overruling in part Brasfield v. State*, 600 S.W.2d 288 (Tex.Cr.App.1980) (Opinion on State's Motion for Rehearing). See also *Brasfield v. State*, supra at 303 (Clinton, J., dissenting on State's Motion for Rehearing). In the instant case, appellant timely filed a motion to quash the indictment, as set forth in pertinent part above, and there was no amendment made to the indictment by the State. Thus, the issue becomes whether the indictment on its face fails to convey some requisite item of notice. The notice provided by the indictment in question must be examined from the perspective of the accused in light of his constitutional presumption of innocence. *King v. State*, 594 S.W.2d 425, 426 (Tex.Cr.App.1980); *Cruise v. State*, 587 S.W.2d 403 (Tex.Cr.App.1979); *Drumm v. State*, 560 S.W.2d 944 (Tex.Cr.App.1977).

Although cursory examination of our prior treatment of claims alleging insufficient notice from the face of an indictment may give the impression of inconsistency, a closer analysis reveals that such cases are divisible into categories contingent upon a variety of factors, including, but not limited to, the statutory description of the prohibited conduct and whether the notice deficiency complained of describes an act or omission by the accused.

### IV. Notice as to Appellant

■ Generally, the State need not plead with additional specificity those matters which are statutorily defined in the alternative where the matter is not an act or omission of the defendant. See, e.g., *Allison v. State*, 618 S.W.2d 763 (Tex.Cr.App. 1981) (failure to specify "owner" or "effective consent" did not deny notice); *Linville v. State*, 620 S.W.2d 130 (Tex.Cr.App.1981) (robbery indictment need not further define "in the course of committing theft," although V.T.C.A. Penal Code, § 29.01(1) provides four situations which might render the robbery in the course of committing theft); *Hall v. State*, 640 S.W.2d 307 (Tex. Cr.App.1982) (attempted murder indictment may allege only "with intent to commit murder" without further addressing the variety of acts which might constitute murder under V.T.C.A. Penal Code, § 19.02). See

also, Dix, *Texas Charging Instrument Law: Recent Developments and the Continuing Need for Reform*, 35 Baylor L.Rev. 689, 767–75 (1983).

In *Terry v. State*, 471 S.W.2d 848 (Tex. Cr.App.1971), Oranza Terry had been convicted of placing and causing to be placed on individual packages of cigarettes a counterfeit cigarette tax stamp. After concluding that the State need not follow the in haec verba rules then applicable to forgery, swindling and similar cases in which the contents of the instrument and their construction served as the very basis of the prosecution, the Court considered the notice provided from the face of the indictment and found it insufficient because:

> "Not only is there no definition of such a stamp present, there is no description of the stamp in question. There is nothing in this indictment to inform the accused of the specific acts he is alleged to have committed to commit this offense. It is only by speculation and by looking outside the indictment that the accused can determine the acts with which he is charged.

> \*    \*    \*    \*    \*    \*

> In the instant indictment there are no explanatory averments of any type or being and therefore insufficient pleadings are presented."

*Terry v. State*, supra at 851–52. See also *American Plant Food v. State*, supra at 603–04.

In *Drumm v. State*, 560 S.W.2d 944 (Tex.Cr.App.1977), an appeal from a conviction for driving with a suspended license, under V.A.C.S., Art. 6687b, §§ 24, 34, the Court cited *American Plant Food v. State*, supra, and concluded that appellant's timely motion to quash the information entitled him to notice as to exactly which of several offenses set forth in the statute he had violated. Of particular interest is Judge Odom's statement as to the basis for requiring the State to provide specificity beyond that needed to set forth an offense, following the timely filing of a motion to quash by the accused.

"In the face of the constitutional presumption of innocence to which every accused is entitled, it cannot be claimed by the state, when there is a motion to quash on these grounds, that appellant knew the grounds for the suspension of his license. There may exist several such grounds for suspension, and there may exist various defenses to some or all of those grounds. It is not for us to speculate on possible defenses; those are for the accused and counsel to investigate, prepare, and establish if they can. In order to perform that duty, however, the accused is entitled to notice of the particular cause for suspension upon which the State will rely. *The accused is not required to anticipate any and all variant facts the State might hypothetically seek to establish. When the defendant petitions for sufficient notice of the state's charge by motion to quash adequately setting out the manner in which notice is deficient, the presumption of innocence coupled with his right to notice requires that he be given such notice.* Appellant here was entitled to such notice and his motion to quash was sufficient to point out his need. The motion to quash should have been granted."

*Drumm v. State,* supra at 947.

This Court has repeatedly held that an indictment or information which tracks the language of the statute which defines the act constituting the offense is sufficient to convey adequate notice to an accused only where the language of the statute is itself completely descriptive of the offense. In cases where the statutory language is not completely descriptive of the offense, then additional specificity will be required in the face of a timely motion to quash. See, e.g., *Haecker v. State,* 571 S.W.2d 920 (Tex.Cr. App.1978) ("torture an animal" insufficient to give appellant adequate notice and enable him to prepare a defense).

Although the term "delivery" is defined by statute, we have held that because the statute provides three different and distinct ways of establishing the accused's criminal conduct, the State must further specify the acts or omissions of the accused upon which it will rely when such further specification is requested by means of a timely motion to quash. *Ferguson v. State,* 622 S.W.2d 846, 850–51 (Tex.Cr.App. 1981) (Opinion on State's Motion for Rehearing). Judge W.C. Davis, writing for the majority in *Ferguson,* supra, noted that, unlike the term "owner" in *Thomas v. State,* supra, the term "delivery" goes to the very essence of the State's case, and the type of delivery which the State intended to prove would be critical to the defendant's preparation of a defense. *Ferguson v. State,* supra at 850. After reviewing numerous cases addressing adequacy of notice provided by an indictment, he concluded:

"From these cases, it is clear that even though an act or omission by a defendant is statutorily defined, if that definition provides for more than one manner or means to commit that act or omission, then upon timely request, the State must allege the particular manner or means it seeks to establish."

*Id.* at 851.

■ The State is correct in its assertion that, as a general proposition, an indictment alleging an aggravated offense need not set forth all of the elements of the underlying, or aggravating offense. Thus, an individual indicted for robbery is not entitled to notice as to the elements of the underlying theft. *Hightower v. State,* supra; *Hill v. State,* supra; *Davis v. State,* supra. Similarly, an individual indicted for capital murder committed during the commission of a felony is not entitled to notice as to the elements of the underlying felony. *Lamb v. State,* supra; *Hammett v. State,* supra.

■ However, when a statute proscribes conduct constituting an aggravated feature of the offense, and when that aggravated conduct may be directed at a person other than the ultimate victim of the crime alleged, the specification of that person is not an essential element of the underlying offense, but rather a fact necessary to provide notice, to which the accused is entitled, should he request it by means of a timely

filed motion to quash. *King v. State,* supra at 426. Accord *Goss v. State,* 580 S.W.2d 587 (Tex.Cr.App.1979); *Brem v. State,* 571 S.W.2d 314 (Tex.Cr.App.1978); *Childs v. State,* 547 S.W.2d 613 (Tex.Cr.App.1977).

Thus, this Court has held that, although the State need not allege the elements of the aggravating offense committed or attempted during the course of which a capital murder occurs, it is still necessary to allege the name of the victim or intended victim thereof where the accused has timely requested such information through a motion to quash the indictment. *King v. State,* supra at 426; *Brasfield v. State,* 600 S.W.2d 288 (Tex.Cr.App.1980); *Evans v. State,* 601 S.W.2d 943, 947 (Tex.Cr.App. 1980); *Silguero v. State,* 608 S.W.2d 619, 620 (Tex.Cr.App.1980); *Pinkerton v. State,* 660 S.W.2d 58, 63 (Tex.Cr.App.1983). A similar result has been reached with respect to the name of the person supplying the remuneration in a "murder for hire" capital murder prosecution. *Janecka v. State,* 739 S.W.2d 813, 820 (Tex.Cr.App. 1987). The following remarks by the *King* Court are particularly relevant to appellant's case:

> "It is clear that when the criminal conduct constituting an aggravated feature of an offense may be directed at a person other than the ultimate victim of the crime alleged, *the specification of that person is a fact to which the accused is entitled should he request it by timely filed written motion to quash.*"

*King v. State,* supra at 426. See also *Brasfield v. State,* supra at 294; *Pinkerton v. State,* supra at 63.

■ Having alleged that appellant entered the described premises, attempted to commit and did commit theft, the State was not obligated to allege in the indictment the elements of the underlying theft. However, the State was clearly obligated to prove an attempted or a completed theft, based upon these allegations. It is inconceivable that the State could succeed in this undertaking without proving from whom appellant had taken or attempted to take property. However, it is by no means a necessary conclusion that appellant took or attempted to take property from the owner of the premises he was alleged to have entered unlawfully. Thus, once appellant requested the name of the individual from whom he allegedly took property or attempted to take property during a burglary, his constitutional presumption of innocence, coupled with our prior holding in *King v. State,* supra, and its progeny, mandate that the State provide such information crucial to appellant's defense. Accordingly, we hold that, by virtue of his timely written motion to quash the indictment, appellant was entitled to have the State specify the name of the individual from whom property was taken or attempted to be taken.

As to the State's invitation to analogize appellant's case to the law of motions to quash as it applies to prosecutions for capital murder, we have already noted that, in capital murder prosecutions, when criminal conduct constituting the aggravating feature of the offense may be directed at a person other than the ultimate victim of the capital murder, the failure to allege the name of the person at whom the aggravating conduct is directed has been held a fact which is crucial to the accused's preparation of a defense to the main charge of capital murder. *King v. State,* supra; *Brasfield v. State,* supra; *Evans v. State,* supra; *Silguero v. State,* supra; *Pinkerton v. State,* supra; *Woolls v. State,* 665 S.W.2d 455 (Tex.Cr.App.1983). This holding has been modified by later cases only to the extent that now, once we conclude there was error in denying a timely motion to quash, we continue the analysis to ascertain whether, in the context of the particular case, this failure had an impact on the accused's ability to prepare a defense, and finally, how great an impact. *Adams v. State,* supra; *Rougeau v. State,* 738 S.W. 2d 651 (Tex.Cr.App.1987); *Janecka v. State,* supra.

As to the State's invitation to analogize the instant case to those involving aggravated robbery, as that offense is prescribed in

V.T.C.A. Penal Code, § 29.02,[8] we note that aggravated robbery is defined as being, to quote the State's brief, "an assaultive offense which contains an underlying element of criminal conduct; that element is, that the assault occurred while the defendant was 'in the course of committing theft.'" The phrase "in the course of committing" is in turn defined as:

"conduct that occurs in an attempt to commit, during the commission, or in immediate flight after the attempt or commission of theft."

V.T.C.A. Penal Code, § 29.01(1). The State is, of course, correct in that all of the elements of the underlying theft need not be alleged in the indictment, even in the face of timely filed motion to quash.

▆ However, the State overlooks the distinction drawn above with respect to the function which the attempted or completed theft or felony serves in prosecutions under § 30.02(a)(3), supra; viz., the attempted or completed theft or felony in prosecutions under § 30.02(a)(3), supra, supplants the requisite mental state under prosecutions under §§ 30.02(a)(1) or (2), supra. We have long held that the intent in a robbery prosecution under §§ 30.02(a)(1) or (2), supra, or their precursors under earlier penal codes, must be expressly averred. *Ex parte Oliver*, 703 S.W.2d 205 (Tex.Cr.App. 1986); *Davila v. State*, 547 S.W.2d 606 (Tex.Cr.App.1977); *Ex parte Cannon*, 546 S.W.2d 266 (Tex.Cr.App.1976); *Lowe v. State*, 163 Tex.Crim. 578, 294 S.W.2d 394 (1956); *Hammons v. State*, 29 Tex.Crim. 445, 16 S.W. 99 (1891); *West v. State*, 35 Tex. 89 (1872). Under the rationale of *King v. State*, supra, *Ferguson v. State*, supra, and their progeny, we now hold that

in prosecutions for burglary under § 30.02(a)(3), supra, alleging the attempt to commit theft and an actual completed theft, the State must, upon request therefor through timely filed written motion to quash the indictment, provide a description of the property allegedly stolen or attempted to be stolen, and also the name of the owner, if known.

In appellant's case, this omission was called to the trial court's attention through appellant's timely filed written motion to quash the indictment. It was error for the trial court to overrule that motion. Thus, the first prong of the test set forth in *Adams v. State*, supra, is satisfied.[9] The next step is to decide, in the context of the case, whether this had an impact on appellant's ability to prepare a defense, and finally, how great an impact. *Adams v. State*, supra at 903. In accordance with the Court's holding in *Adams*, supra, the proper procedure in such a case is for this Court to remand the cause to the court of appeals for an analysis of the record as a whole to ascertain the impact, if any, upon appellant's ability to prepare his defense occasioned by the trial court's error.

Accordingly, the judgment of the court of appeals is vacated and the cause is remanded to that court for further proceedings not inconsistent with this opinion.

ONION, P.J., and McCORMICK, J., dissent.

WHITE, J., not participating.

TEAGUE, Judge, concurring and dissenting.

To me at least, given the calibre of the attorneys in this cause, and one of the

---

8. V.T.C.A. Penal Code, § 29.02, provides in part as follows:

"(a) A person commits an offense if, in the course of committing theft as defined in Chapter 31 of this code and with intent to obtain or maintain control of the property, he:

(1) intentionally, knowingly, or recklessly causes bodily injury to another; or

(2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death."

9. The court of appeals also based its holding on the accepted principle that appellant was entitled to have alleged in the indictment sufficient facts to bar a subsequent prosecution for the same offense. *DeVaughn v. State*, supra at 149, 151. Having concluded that appellant was entitled to a description of the property allegedly stolen and the name of the owner of that property as a matter of adequate notice of the offense with which he was charged, we need not address this alternate ground for the court of appeals' holding. Thus we express no view as to that alternate basis for the court's holding.

issues before this Court, it is amazing that none of them sets out in either the briefs or the petitions that were filed in this cause a summary of the facts of this cause, that went to the guilt or punishment that was assessed by the trial judge. Therefore, I shall later perform that duty. Perhaps this causes the majority to act as it does.

The record reflects that Lernard Devaughn, henceforth appellant, was charged with committing the offense of burglary, by intentionally and knowingly entering a habitation, "and therein attempted to commit and committed theft, without the effective consent of JOYCE ERNEST, the owner of said habitation." One of the ways that a "person" might commit the offense of burglary is "if, without the effective consent of the owner, he enters a habitation and [thereafter] commits or attempts to commit a felony or theft." V.T.C.A., Penal Code, § 30.02(a)(2). The indictment in this cause clearly alleged that method of burglary, and the State's proof established beyond any doubt that appellant committed the alleged crime.

For reasons stated in Judge Clinton's majority opinion, however, the indictment in this cause was subject to appellant's motion to quash. To that extent, I agree wholeheartedly with what Judge Clinton's majority opinion states and holds. It is, in part, to the majority's decision to remand this cause to the court of appeals to perform "a harmless error analysis" that causes me to file this opinion; especially, when that can be done in a minimum amount of time by this Court. By failing to perform this minimal task, we put this cause into appellate orbit.

The facts of this cause reflect that William Frederick Liskow, Jr., whose last name is spelled in the record either as "Liskow" or "Liscow", and because it is more often spelled "Liskow" than any other way I will spell it "Liskow", testified that he was a next door neighbor of the complainant. Liskow testified that on the day in question he observed an individual, who he identified as appellant, running from the complainant's residence with a sack in his hand. Liskow testified that he chased and stopped appellant. Liskow rec-

ognized appellant as being the son of a neighbor "who lived down the street". Appellant admitted to Liskow that he had broken into the complainant's residence.

Although he did not expressly identify any of the items in the bag, appellant did admit to Liskow that the items in the bag he was carrying came from the complainant's residence. Appellant also admitted to Liskow that he got inside of the house through a window, which window he showed Liskow. Appellant pleaded with Liskow not to call the police because, as he represented to Liskow, he was scheduled to be inducted into the United States Army in New York. When Liskow told appellant that "they don't have any army up there", appellant told him he was not going to enlist in the Army, but was going to enlist in the United States Navy. Liskow told him that they also "did not have any navy there." Appellant then told him that he was going to New York to enlist in the United States Air Force. Liskow told him they "don't have air force there [either]." Liskow then concluded from appellant's inconsistent statements: "I was pretty sure he wasn't telling me the truth." Appellant, however, continued pleading with Liskow not to call the police. On the pretext that he was going to return the items to the complainant's residence, appellant managed to escape from Liskow's presence. This occurred shortly before the police arrived on the scene. Liskow later attended "a photo lineup" that was held on September 9, 1982, where he formally identified appellant as the person he had come into contact with on the day in question. Liskow notified the police that based upon what he had witnessed he believed that his neighbor's house had been burglarized by appellant. The police were summoned and came to the complainant's residence.

The complainant, a recent divorcee, testified that although she had put her home up for sale with Century 21, she was still living in it with her thirteen year old son Billy, who had just returned from California the night before the alleged burglary occurred. The complainant also testified that after returning to their home from

lunch and a movie on the day in question, near mid-afternoon on August 22, 1982, they soon discovered that the residence had been burglarized and personal property had been taken therefrom. Only employees of Century 21 had permission to go inside the residence while she and her son were gone to lunch and the movie. Although no direct testimony was presented through any employee of Century 21, I believe that one can infer from this record that no one from that business unlawfully went inside the complainant's house and took anything therefrom while she and her son were gone. And appellant made no such assertion on direct appeal or before this Court. The complainant further testified that she did not know appellant. The complainant's son did not testify. The complainant also testified that after the burglary in this cause occurred she was again burglarized on November 21, 1982. She believed that appellant or a neighbor's son, who the complainant characterized as a "nuisance", committed the second burglary.

Appellant, however, could not have committed the second burglary, either individually or as a party, because the evidence reflects that he was then incarcerated in the Bexar County Jail on the charge at bar.

Several police officers also testified concerning their response to the burglary and their investigation of the burglary, which testimony I do not find adds anything of a material nature to the State's case.

I find that the circumstantial evidence adduced easily shows that appellant unlawfully entered the residence and took from inside of the complainant's residence personal property.

Appellant neither testified nor presented any defensive evidence at the guilt stage of the trial.

After appellant was found guilty by the jury, the trial judge conducted a punishment hearing, at which appellant's father testified. Appellant's father testified that at the time the burglary occurred appellant was not allowed to live in his residence: "He was living on the street." However, when the punishment hearing was conduct-

ed, appellant and his father "had made peace." Appellant also had one of the investigating officers testify that he could, "as far as the law, at least, [be] trouble-free in the Live Oak community" if he had "strict supervision." The trial judge assessed punishment at ten (10) years' confinement in the Department of Corrections, rejecting appellant's counsel's plea for probation. Appellant, through counsel, elected to then be sent to the Department of Corrections where he could commence serving his sentence. The trial judge indicated that he would later consider "shock probation" for appellant.

Thereafter, appellant pled "true" to the State's motion to revoke his five year probation that he had received on April 1, 1982, for committing the offense of burglary of a building. The trial judge revoked the probation. The offense at bar was the basis for the order of revocation. Sentence was five years' confinement in the Department of Corrections. Appellant waived his right to appeal the trial court's order of revocation, and then accepted the five year sentence. I assume, given the time that has elapsed since appellant was sentenced, and the overcrowded conditions of the Department of Corrections, appellant is now released on parole or mandatory supervision for that offense. I am not so confident to make such a statement about appellant's ten year sentence; therefore, will not.

Notwithstanding the overwhelming evidence that the State presented that established beyond any doubt appellant's guilt, a majority of this Court votes to remand this cause to the court of appeals, so that it can make the determination "whether, in the context of the case, [the error in not granting appellant's motion to quash the indictment in this cause] had an impact on the defendant's ability to prepare a defense, and finally, how great an impact." *Adams v. State*, 707 S.W.2d 900 (Tex.Cr.App.1986).

In case the reader is unaware, *Adams*, supra, is the case in which a majority of this Court opted to expressly overrule this Court's well written and well reasoned opinion of *Jeffers v. State*, 646 S.W.2d 185 (Tex.Cr.App.1981) (Opinion on State's Mo-

tion for Rehearing), which had overruled this Court's panel opinion of *Craven v. State*, 613 S.W.2d 488 (Tex.Cr.App.1981). Thus, by overruling *Jeffers, supra,* a majority of this Court "restore[d] the essence of *Craven." Adams,* supra, (Clinton, J., concurring opinion).

Notwithstanding my continuing belief that a majority of this Court erred in what it stated and held in *Adams,* supra, but adhering to stare decisis, and given the above, to remand this cause to the court of appeals for it to make some sort of "harmless error" analysis causes me to repeat, as modified to fit this case, what Presiding Judge Onion stated in the dissenting opinion that he filed in *Adkins v. State*, 717 S.W.2d 363, 366 (Tex.Cr.App.1986): "I dissent to the remand to the Court of Appeals ... I would decide the [issue of harmless error] here. We needlessly keep too many cases in appellate orbit."

Given the above, and believing that the San Antonio Court of Appeals, as well as this Court, has better things to do, I vote to hold, pursuant to Rule 81(b)(2), *Rules of Appellate Procedure,* that given the facts of this cause the error that exists does not constitute reversible error because this Court can unequivocally state, beyond a reasonable doubt, that the error made no contribution to the appellant's conviction by the jury, or to the punishment that was assessed by the trial judge. Thus, there is no need to remand this cause to the court of appeals for that court to make a "harmless error" analysis. Because the majority declines to accept my suggestion, I respectfully dissent.

For the above and foregoing reasons, I respectfully concur and dissent to what the majority opinion states and holds in this cause.