

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-24-00152-CR

---

ERIK MITCHELL RIVAS, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

---

On Appeal from the 47th District Court
Randall County, Texas
Trial Court No. 32689A, Honorable Dee Johnson, Presiding

---

March 27, 2025

## MEMORANDUM OPINION

### Before QUINN, C.J., and PARKER and YARBROUGH, JJ.

Appellant, Erik Mitchell Rivas, appeals his conviction for capital murder[1] and resulting statutory sentence of life without the possibility of parole.[2] We affirm the trial court's judgment.

---

[1] *See* TEX. PENAL CODE ANN. § 19.03(a)(2).

[2] *See* TEX. PENAL CODE ANN. §§ 12.31(a)(2), 19.03(b).

BACKGROUND

Appellant and Shereena Webster were in a tumultuous, on-again-off-again romantic relationship over the course of several years. However, in July of 2022, Webster told Appellant that the relationship was over. Appellant was unwilling to accept Webster's decision. He began texting her incessantly. Webster eventually told Appellant to never call, text, or come to her house ever again and even threatened to involve law enforcement if he would not leave her alone. After Webster blocked Appellant from being able to contact her, he began "spoofing" texts to continue communicating with her around the phone blocks. The tone of these texts escalated and grew more threatening into mid-August.

During the evening of August 17, by his own assessment, Appellant drank a lot. Around 3:00 a.m. on August 18, Appellant drove to Webster's residence. Somehow, Appellant gained entry into Webster's home. When he entered her residence, Appellant possessed a 9mm Hi-Point semiautomatic pistol. Soon thereafter, Appellant shot Webster eight times before exiting through the front door.[3] Webster's daughter discovered Webster's body and the Amarillo Police Department was notified.

As a result of the investigation of the scene, the police identified Appellant as a person of interest. An investigating officer called Appellant on his cell phone to inquire as to Appellant's whereabouts the previous night, when Webster was killed. Appellant indicated that he may have driven by Webster's house on his way to a job-related errand

---

[3] Forensic evidence indicated that the Hi-Point pistol was used to fire six shots and that a Sig Sauer 9mm pistol Appellant obtained from Webster's bedroom was used to fire three shots, including the fatal shot. It appears that one shot missed Webster.

2

in Plainview. Suspicious of Appellant's responses, investigating officers issued a directive to detain Appellant for further investigation. Appellant was located and arrested that afternoon near DeSoto, Texas, six hours southeast of Amarillo. When taken into custody, Appellant had blood on his jeans and shoes. A Sig Sauer 9mm pistol, that belonged to Webster, was seized from an inventory of Appellant's truck.

Appellant was subsequently charged by indictment with the offense of capital murder. The indictment alleged that Appellant caused the death of Webster by shooting her with a firearm while in the course of committing burglary of a building.

At trial, the State presented a case that Appellant gained entry into Webster's residence by some means but without Webster's consent and that he killed her in the course of committing assault or burglary. In furtherance of its theory of the case, the State offered evidence that Appellant and Webster had a physical struggle before the shooting and, after the shooting began, Appellant went to Webster's bedroom to retrieve her Sig Sauer pistol and took the pistol with him when he left the residence. Appellant testified that Webster permitted him into her house, he could not recall how the shooting occurred but that he never touched the trigger, and he did not steal Webster's Sig Sauer pistol. He did, however, concede that it was his bloody shoeprints leading from the living room to the bedroom, where the Sig Sauer was kept. After hearing all the evidence, the jury returned a verdict finding Appellant guilty of capital murder as charged in the indictment. The trial court entered judgment imposing the statutory sentence of incarceration for life without the possibility of parole. Appellant timely filed notice of appeal.

3

By his appeal, Appellant presents two issues. By his first issue, Appellant contends that the trial court infringed on his constitutional right to trial by jury when it failed to qualify the jury under article 35.12 of the Texas Code of Criminal Procedure. By his second issue, Appellant contends that the evidence is insufficient to support his conviction.

### ISSUE ONE: JURY QUALIFICATIONS

By his first issue, Appellant contends that the trial court erred in failing to qualify the jury under article 35.12 of the Texas Code of Criminal Procedure and that this failure impacted his right to a trial by jury.

Under article 35.12, prospective jurors must be asked by the trial court, or under its direction, whether they are qualified to vote in the county and state, have ever been convicted of theft or any felony, and are under indictment or legal accusation for theft or any felony. TEX. CODE CRIM. PROC. ANN. art. 35.12(a). A party may challenge a prospective juror for cause if that person is not a qualified voter, has been convicted of theft or any felony, or is legally accused of theft or any felony. *Id.* art. 35.16(a)(1)–(3). Unless the propriety of the impanelment of the jury is disputed in the trial court or the record affirmatively shows that it was improperly impaneled, we will presume that the jury was properly impaneled. TEX. R. APP. P. 44.2(c)(2). However, there is no requirement under article 35.12 that the qualification of prospective jurors be reflected by the record. *See* TEX. CODE CRIM. PROC. ANN. art 35.12.

The record reflects that during voir dire, the trial court did not ask the prospective jurors the qualifying questions listed in article 35.12. Further, Appellant did not raise a

4

challenge to any prospective juror on any of the grounds listed in article 35.12. Likewise, on appeal, Appellant has not pointed to any record evidence affirmatively showing that the jury was not properly impaneled. Because "[a] silent record is not tantamount to an affirmative showing that jurors (1) were not asked the qualifying questions under [a]rticle 35.12 or (2) responded in a manner such that they should have been disqualified but were not," *see Hadley v. State*, Nos. 02-23-00317-CR, 02-23-00318-CR, 2024 Tex. App. LEXIS 8657, at *5 (Tex. App.—Fort Worth Dec. 12, 2024, pet. filed) (mem. op., not designated for publication), we begin with the presumption that the jury was properly impaneled. *See* Tᴇx. R. Aᴘᴘ. P. 44.2(c)(2); *see Light v. State*, 15 S.W.3d 104, 107 (Tex. Crim. App. 2000) (en banc) (in absence of evidence of impropriety, we must indulge every presumption in favor of regularity of trial court proceedings).

In some counties, the qualification questions of article 35.12 are routinely asked of the general jury pool, typically in a central jury room, under the direction of the court before the venire members are sent to individual courts to be impaneled for a specific case. *Bonilla-Rubio v. State*, No. 02-23-00200-CR, 2024 Tex. App. LEXIS 7139, at *5 (Tex. App.—Fort Worth Oct. 3, 2024, no pet.) (mem. op., not designated for publication); *Carrier v. State*, No. 05-23-00143-CR, 2024 Tex. App. LEXIS 5187, at *12 (Tex. App.—Dallas July 23, 2024, pet. ref'd) (mem. op., not designated for publication). Nothing in the record here suggests that this procedure was not followed or that the prospective jurors were not otherwise asked the qualifying questions at some point off the record. *Bonilla-Rubio*, 2024 Tex. App. LEXIS 7139, at *5–6. Because the record does not affirmatively show that the jury was not properly impaneled, Appellant has failed to overcome the

presumption that the jury was properly impaneled. *Id.* at *6; *Carrier*, 2024 Tex. App. LEXIS 5187, at *12.

However, even were we to presume that the article 35.12 qualification questions were not asked, we must still consider whether Appellant was harmed under the applicable harm standard. *Sierra v. State*, No. 14-23-00803-CR, 2025 Tex. App. LEXIS 1242, at *8 (Tex. App.—Houston [14th Dist.] Feb. 27, 2025, no pet. h.) (mem. op., not designated for publication); *Carrier*, 2024 Tex. App. LEXIS 5187, at *12. We must disregard non-constitutional error that does not affect Appellant's substantial rights. *See* TEX. R. APP. P. 44.2(b). The failure to ask prospective jurors the qualifying questions under article 35.12 is a statutory violation and not constitutional error. *Carrier*, 2024 Tex. App. LEXIS 5187, at *12–13. Because Appellant does not argue and the record does not show that any member of the jury in this case was not qualified to serve, there can be no harm from the complained-of error. *Sierra*, 2025 Tex. App. LEXIS 1242, at *8–9; *Godoy v. State*, No. 01-94-00073-CR, 1995 Tex. App. LEXIS 1670, at *14 (Tex. App.—Houston [1st Dist.] July 27, 1995, no pet.) (mem. op., not designated for publication) ("[I]f a trial court does not make the inquiries required by article 35.12, the defendant has the burden on appeal to show evidence in the record that an actual juror was disqualified for one of the reasons listed by the article."); *Smith v. State*, 742 S.W.2d 847, 851 (Tex. App.—Austin 1987, no pet.) (appellant failed to show that any juror was disqualified by failure to ask article 35.12 qualifying questions and, consequently, failed to show harm).

Because Appellant has neither overcome the presumption that the prospective jurors were properly qualified nor shown how he was harmed by any such failure, we overrule Appellant's first issue.

By his second issue, Appellant contends that the evidence is insufficient to support the verdict of capital murder.[4] The State responds arguing that there is ample evidence that Appellant murdered Webster while in the course of committing burglary.

The standard we apply in determining whether the evidence is sufficient to support a conviction is the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). Under that standard, we consider all the evidence in the light most favorable to the verdict and determine whether, based on the evidence and reasonable inferences therefrom, a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). Sufficiency of the evidence is measured against the elements of the offense as defined by a hypothetically correct jury charge. *Thomas v. State*, 444 S.W.3d 4, 8 (Tex. Crim. App. 2014) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). In our review, we must evaluate all the evidence in the record, both direct and circumstantial, regardless of whether that evidence was properly or improperly admitted. *Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We are also required to defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Winfrey v. State*,

---

[4] Appellant does not challenge the sufficiency of the evidence supporting his commission of the murder of Webster. Rather, he argues that the evidence is insufficient to establish that he murdered Webster while in the course of committing or attempting to commit burglary. *See* TEX. PENAL CODE ANN. § 19.03(a)(2).

393 S.W.3d 763, 768 (Tex. Crim. App. 2013). When the record supports conflicting inferences, we presume that the jury resolved any conflicts in favor of the verdict and will defer to that determination. *Merritt v. State*, 368 S.W.3d 516, 525–26 (Tex. Crim. App. 2012).

Based on the allegations made in the indictment, to prove capital murder in the present case, the State had to prove that Appellant intentionally committed murder while in the course of committing or attempting to commit burglary. *See* TEX. PENAL CODE ANN. § 19.03(a)(2). A person commits the offense of burglary if, without the effective consent of the owner, he enters a habitation and commits a felony, theft, or an assault. *See id.* § 30.02(a)(3). Under subsection (a)(3), as alleged in the present indictment, the prosecution does not have to prove Appellant's specific intent when he entered the habitation. *Rivera v. State*, 808 S.W.2d 80, 92 (Tex. Crim. App. 1991) (en banc). It is sufficient that the State proved that Appellant entered Webster's residence without her effective consent and, lacking intent to commit any crime upon his entry, forms the intent and commits or attempts to commit a felony, assault, or theft. *DeVaughn v. State*, 749 S.W.2d 62, 65 (Tex. Crim. App. 1988) (en banc).

Appellant's challenge to the sufficiency of the evidence contends that the State did not prove that Appellant entered Webster's residence attempting to commit assault or committed assault once inside the residence. *See* TEX. PENAL CODE ANN. § 30.02(a)(3). However, Appellant's focus on the sufficiency of the evidence to establish that Appellant committed assault overlooks the evidence that Appellant committed theft while in Webster's residence. *See id.* (offense of burglary includes entering a habitation and committing theft). A person commits theft if he unlawfully appropriates property with intent

8

to deprive the owner of the property. *See id.* § 31.03(a). Our review of the evidence establishes that Appellant unlawfully appropriated Webster's Sig Sauer pistol with the intent to deprive her of this property. This is sufficient evidence to establish that Appellant committed murder while in the course of committing burglary. *See* TEX. PENAL CODE ANN. § 19.03(a)(2).

However, even were we to limit our consideration of the sufficiency of the evidence to whether Appellant committed murder while in the course of committing assault, we find the evidence sufficient to support Appellant's conviction. The evidence establishes that Appellant had sent Webster persistent and increasingly desperate text messages for weeks leading up to the murder, entered her residence with a loaded weapon, and assaulted her in a manner that caused significant trauma to her head. The jury could reasonably conclude, beyond a reasonable doubt, that Appellant entered the residence with the specific intent to assault Webster or that he formed the intent once inside and assaulted her before murdering her.

Finding that the record evidence supports Appellant's conviction for the offense of capital murder, we overrule Appellant's second issue.

## Conclusion

Having overruled both of Appellant's issues, we affirm the trial court's judgment.


Judy C. Parker
Justice

Do not publish.