**Theotis Lee HODGE Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 05–87–00114–CR.**

Court of Appeals of Texas, Dallas.

July 19, 1988.

Theotis Lee Hodge, pro se.

Pamela Sullivan Berdanier, Dallas, for appellee.

Before HOWELL, ROWE and LAGARDE, JJ.

LAGARDE, Justice.

Appellant, Theotis Lee Hodge, appeals his conviction of retaliation [1] in a trial before the court on January 14, 1987, following his nolo contendere plea pursuant to a plea bargain agreement. Appellant's punishment was assessed by the court at two years in the Texas Department of Corrections. On appeal, Hodge, pro se, asserts three points of error; namely: (1) that the trial court erred in dismissing two motions to dismiss because "good cause was shown;" (2) that the indictment is fundamentally defective for failure to state an offense; and (3) that his nolo contendere plea was not voluntarily or knowingly made.

■ In point of error number one, Hodge complains that the trial court erred in overruling his first "Motion for Dismissal of Prosecution" filed on November 14, 1986, and his second "Motion to Dismiss Prosecution" which was filed on January

1. Tex.Penal Code § 36.06(a) (Vernon Supp. 1988).

12, 1987. The 1986 motion alleges that Hodge's warrantless arrest was illegal because of lack of probable cause. There is no indication in the record on appeal that Hodge ever requested, or obtained, a hearing on the illegal arrest issue. Further, the record reflects that at a subsequent "Motion to Suppress Testimony Concerning Arrest" hearing, Hodge affirmatively stated that he had no objection to the nature of the arrest and, based on his waiver of objection, requested that the court deny the State the opportunity to prove probable cause for the arrest. Consequently, Hodge has waived any right to complain of this issue on appeal. *See Parker v. State*, 545 S.W.2d 151, 155 N. 6 (Tex.Crim.App.1977) (appellate court may only consider record presented); *Stevenson v. State*, 456 S.W.2d 60, 62 (Tex.Crim.App.1970) (appellate court will only consider evidence in appellate record.)

▬ Concerning the January 12, 1987 motion, Hodge appears to urge that the mistrial declared on January 6, 1987 establishes that he is entitled to a dismissal because the State failed to prove its case and, therefore, retrial is barred by the double jeopardy clause. The record on appeal does not establish the basis of the mistrial and is insufficient to provide a basis for our review of this complaint. While Hodge's self-serving pleading is before us, we cannot accept allegations as true unless they are supported by the appellate record. *Brown v. State*, 523 S.W.2d 238, 240–41 (Tex.Crim.App.1975). Consequently, Hodge's first point of error is overruled.

▬ In his second point of error, Hodge contends that the indictment under which he was convicted is fundamentally defective. The indictment charges Hodge with retaliation and, in relevant part, states that Hodge

did unlawfully then and there knowingly and intentionally threaten to harm and injure T.D. Weeks, by an unlawful act, to-wit: threatened to kill the said T.D. Weeks in retaliation for and on account of the service of T.D. Weeks, a peace officer.

▬ The above language "tracks" the language of the statutory offense of retaliation, which reads, in relevant part, as follows:

A person commits an offense if he intentionally or knowingly harms or threatens to harm another by an unlawful act in retaliation for or on account of the service of another as public servant, witness, prospective witness, or informant.

Tex.Penal Code § 36.06(a) (Vernon Supp. 1988). Subject to rare exceptions, an indictment which tracks the words of the penal statute in question is legally sufficient and the State need not allege facts which are merely evidentiary in nature. *Moreno v. State*, 721 S.W.2d 295, 300 (Tex. Crim.App.1986); *Phillips v. State*, 597 S.W.2d 929, 934 (Tex.Crim.App.1980). We find no exception here; consequently, we hold that the indictment is not fundamentally defective for failure to state an offense.

▬ In a pro se motion to quash filed on January 13, 1987, Hodge alleged that "[t]his indictment goes to an act, an unlawful act but fails to describe the act, the unlawful act, as to how the defendant is supposed to have threatened to kill Officer Weeks." We understand Hodge to be complaining that the indictment fails to describe the manner and means, verbally or bodily, by which he is alleged to have threatened to kill T.D. Weeks. In the face of a timely motion to quash, the indictment must allege on its face the facts necessary to show that the offense was committed, to bar a subsequent prosecution for the same offense, and to give the defendant notice of precisely what he is charged with. *DeVaughn v. State*, 749 S.W.2d 62, 67 (Tex. Crim.App.1988), *citing American Plant Food v. State*, 508 S.W.2d 598, 603 (Tex. Crim.App.1974). In determining whether the indictment sufficiently charges an offense, we must read the indictment as a whole. *DeVaughn*, 749 S.W.2d at 67, *citing Dennis v. State*, 647 S.W.2d 275, 279 (Tex.Crim.App.1983) and *Church v. State*, 552 S.W.2d 138, 140 (Tex.Crim.App.1977). Further, the notice provided by the indictment must be examined from the perspective of the accused in light of his constitu-

tional presumption of innocence. *De-Vaughn*, 749 S.W.2d at 68, *citing King v. State*, 594 S.W.2d 425, 426 (Tex.Crim.App. 1980).

■ Where a defendant has timely raised the claim of inadequate notice, the Court of Criminal Appeals has held:

> The general rule is that a motion to quash will be allowed if the *facts* sought are *essential* to give notice. However, unless a fact is essential, the indictment need not plead evidence relied on by the State. *Smith v. State*, 502 S.W.2d 133 (Tex.Cr.App.1973); *Cameron v. State*, 401 S.W.2d 809 (Tex.Cr.App.1966). [Emphasis in original.]

*DeVaughn*, 749 S.W.2d at 67, *quoting Thomas v. State*, 621 S.W.2d 158, 161 (Tex. Crim.App.1981).

Hodge relies primarily on *Doyle v. State*, 661 S.W.2d 726, 731 (Tex.Crim.App.1983), wherein the Court of Criminal Appeals reversed the conviction and held that Doyle's motion to quash the indictment against him for retaliation should have been sustained for failure of the indictment to specify the manner and means whereby the threat was communicated.

In *Adams v. State*, 707 S.W.2d 900, 903 (Tex.Crim.App.1986), recently reaffirmed in *DeVaughn, supra*, 749 S.W.2d at 67, the Court of Criminal Appeals indicated that claims of inadequate notice should be addressed as follows:

> The important question is whether a defendant had notice adequate to prepare his defense. The first step in answering this question is to decide whether the charging instrument failed to convey some requisite item of "notice." If sufficient notice is given, this ends our inquiry. If not, the next step is to decide whether, in the context of the case, this had an impact on defendant's ability to prepare a defense, and, finally how great an impact.

For purposes of this opinion, we assume, but do not decide, that the indictment is insufficient to convey to Hodge the manner or means, whether bodily or verbally, by which Hodge is alleged to have threatened to kill Officer T.D. Weeks. We proceed then to the second step of *Adams* and consider whether, in the context of the case, this deficiency of notice had an impact on Hodge's ability to prepare a defense, and, if so, how great an impact. *DeVaughn*, 749 S.W.2d at 70. We turn now to that consideration.

Article 21.19 of the Code of Criminal Procedure states:

> An indictment shall not be held insufficient, nor shall the trial, judgment or other proceedings thereon be affected, by reason of any defect of form which does not prejudice the substantial rights of the defendant.

TEX.CODE CRIM.PRO. art. 21.19 (Vernon 1966).

Initially, we must consider whether the defect alleged by Hodge is one of form, requiring an analysis pursuant to article 21.19, or one of substance, to which article 21.19 would not apply. It might be said that by earlier concluding that the indictment is not fundamentally defective, we have already concluded that the alleged defect is one of form, not substance. To further explicate this dichotomy, however, we look to *American Plant Food Corp. v. State*, 508 S.W.2d 598, 602 (Tex.Crim.App. 1974).

Following a thorough discussion of the requirements as to form and substance, as found in Chapter 21 of the Code of Criminal Procedure, the Court of Criminal Appeals, in that case concluded:

> Unless the deficiency under Article 21.-21(7),[2] supra, be of such a degree as to utterly fail to charge that an offense against the law was committed by the defendant (cf. Art. 27.08(1), supra), then it is objectionable only as to form and not as to substance. This distinction between an objection to the charge based on substance and one based on form, subtle though it be, is well founded in

---

**2.** [Article 21.21(7) of the Code of Criminal Procedure requires "[t]hat the offense be set forth in plain 'and intelligible words." TEX.CODE CRIM.PROC.ANN., art. 21.21(7) (Vernon 1966) ].

reason, in justice, and in the logic of the Code of Criminal Procedure.

We conclude, therefore, that here the alleged defect as to notice is one of form, not substance. Having so concluded, we then apply article 21.19 as authorized by *Adams*, 707 S.W.2d at 903, and undertake to determine whether the alleged defect prejudiced the substantial rights of Hodge. To be entitled to a reversal based on trial court error in overruling his motion to quash, Hodge must affirmatively show harm. *Opdahl v. State*, 705 S.W.2d 697, 699 (Tex.Crim.App.1986) (applying the old *Craven*[3] rule). In the process of determining whether harm is shown, we look to all of the record, including the statement of facts. *Craven* at 490.

Examination of the pretrial motions filed by Hodge, particularly his Motion to Dismiss the prosecution, reflects that Hodge was in fact sufficiently on notice as to the offense with which he was charged so as to be able to prepare an adequate defense. Incorporated by reference and attached to the Motion to Dismiss as Exhibit A is the arrest report and as Exhibit B is the offense report of the Dallas Police Department. The offense report states the following under the heading of "narrative:"

> Arrestee Hodge told complainant Weeks if he would take the handcuffs off and drop the charges for arresting him, he would beat his ass once they were out of the squad car. At the book in area at Lew Sterrett, Arrestee Hodge told complainant Weeks once he got out of jail that he was going to find him and kill complainant. Arrestee also told complainant Weeks that he should be worried.

The original indictment against Hodge was enhanced with a prior conviction for burglary of a building and a second prior conviction for aggravated rape. Thus, a sentence of life imprisonment was authorized. Pursuant to a plea bargain agreement, both enhancement paragraphs were dismissed in exchange for Hodge's plea of nolo contendere and a sentence of two years in the Texas Department of Corrections. This minimal sentence further tends to negate harm. Although we concede that the plea of nolo contendere itself, pursuant to a plea bargain, did not waive Hodge's right to complain of defects in the indictment, we read *Craven* as requiring a due consideration of all trial court proceedings in determining harm. *See Opdahl* at 699. The record reveals that as a consequence of the plea bargain, Hodge forsook the need to defend himself and thereby no longer stood to profit trial-wise from those additional specifications he sought to have included in the indictment. Under these circumstances, we hold that in order to establish harm, Hodge must come forward with some factual justification other than the meagerness of the specifications which do appear in the indictment. This he has failed to do. We conclude, therefore, in the context of the case, that any deficiency in the indictment had no impact on Hodge's ability to prepare a defense. *DeVaughn*, 749 S.W.2d at 70. No harm has been shown requiring reversal. *Opdahl*, 705 S.W.2d at 699; TEX.R.APP.P. 81(b)(2). Consequently, we overrule Hodge's second point of error.

In his third point, Hodge urges that his plea of nolo contendere was not knowingly and voluntarily made. Hodge's point of error and arguments thereunder are insufficient to preserve error. He fails to specifically point to error in the record but states only conclusions. Nothing is presented for review. *See Braudrick v. State*, 572 S.W.2d 709, 711–12 (Tex.Crim. App.1978), *cert. denied*, 440 U.S. 923, 99 S.Ct. 1252, 59 L.Ed.2d 477; *Berghahn v. State*, 696 S.W.2d 943, 951 (Tex.App.—Dallas 1985, pet. ref'd).

Assuming, arguendo, that the point is preserved, we nonetheless overrule the point. Hodge's testimony in the record reflects that all statutory admonishments were met in all respects. *See* TEX.CODE

---

**3.** *Craven v. State*, 613 S.W.2d 488 (Tex.Crim. App.1981) overruled by *Jeffers v. State*, 646 S.W. 2d 185 (Tex.Crim.App.1981) (Opinion on State's Motion for Rehearing) and reinstated by *Adams v. State*, 707 S.W.2d at 903, (Tex.Crim.App. 1986).

CRIM.PROC.ANN. art. 26.13 (Vernon Supp.1987). Hodge's third point is without merit and is overruled.

Affirmed.

HOWELL, J., dissents.

HOWELL, Justice, dissenting.

I dissent. Plainly, any notion that the indictment was legally sufficient is untenable in view of the most recent decision in point from the Court of Criminal Appeals. *DeVaughn v. State,* 749 S.W.2d 62 (Tex. Crim.App.1988). With respect to a harm analysis, the Court of Criminal Appeals has yet to provide many specifics to be applied in determining harm. Insofar as the case in bar is concerned, the record is insufficient to affirmatively demonstrate a lack of harm. Therefore, in accordance with the command of TEX.R.APP.P. 81(b)(2), we must hold in favor of appellant and reverse.

## THE INDICTMENT CONTAINED A NOTICE DEFICIENCY PROPERLY POINTED OUT BY MOTION TO QUASH

In his pro se motion to quash, appellant alleged that "[t]his indictment fales [sic] to give defendant precise notice of offense with which defendant is charged. It is for *lack of describing the manner and means,* verbally or bodily, *as to how the defendant threatened to kill the said T.D. Weeks"* [Emphasis added.]

Following the overruling of his motion to quash, appellant entered a nolo contendere plea pursuant to a plea bargain agreement. The sum total of the evidence [1] was a written stipulation, signed by appellant, nine lines in length, tracking, almost verbatim, the words of the indictment (quoted at 355). From reading the evidence, we know *nothing more concerning the manner and*

means of communicating the threat than we do from reading the indictment. There was no admissible evidence that appellant, in a *face-to-face encounter with the complainant officer, directly and personally* communicated to his victim, as identified, a threat to kill.

*Doyle v. State,* 661 S.W.2d 726 (Tex. Crim.App.1983) reversed a retaliation conviction for failure of the indictment to specify the manner and means whereby the threat in question was communicated to the intended victim. *Id.* at 730–31. *Doyle* controls here.

An indictment will not suffice against a properly drawn motion to quash unless the indictment alleges everything which the State is burdened to prove in order to survive a directed verdict.[2] *See* TEX.CODE CRIM.PROC.ANN. art. 21.03 (Vernon 1966) ("Everything should be stated in the indictment which is necessary to be proved.")

It is clear from *Doyle* that in a prosecution for retaliation by threat under § 36.06(a) of the Texas Penal Code, the State must allege and prove not only that the threat was made, but that it was communicated; it must further allege and prove the manner and means of communication. *Doyle,* 661 S.W.2d at 730. This the State failed to do.

If a defendant is arrested for a traffic violation and lawfully searched, he is subject to prosecution for any illegal drugs found in his pocket. A threat to kill a specific public official, written on a slip of paper and also found in the defendant's pocket, would be no offense without evidence that the threat was communicated. In the case at bar, it likewise necessarily follows that manner and means of communication was an essential part of the State's case. The indictment contained a notice defect for failure to allege whether the

---

1. The majority has gleaned the purported facts of the offense from police reports attached to a motion to dismiss filed by appellant. Needless to say, those papers, never offered as evidence, cannot be considered as evidence.

2. The majority has given extensive treatment to the distinction between a notice deficiency in

the indictment and a fundamental deficiency. The distinction has little import here (the deficiency complained of was pointed out in a timely motion to quash) except that a fundamental defect might be reversible without the necessity of a harm analysis.

communication was oral or written, made face to face, over the telephone, or expressed to a third person.

Based solely upon knowledge of human events, it would not be unreasonable to assume that the threat was oral, that it was conveyed in a person-to-person encounter with the identified victim, and that it was not conveyed to or through a third person. However, the law of criminal pleading does not deal in assumptions, even reasonable assumptions. It is not sufficient for the indictment to create an assumption as to the elements of the offense. The elements, particularly the manner and means whereby the offense was committed, must be fully pleaded. *Jeffers v. State,* 646 S.W.2d 185, 188 (Tex.Crim.App. 1981).

*Doyle* remains viable as authority with respect to the nature of a notice defect in an indictment. The primary authority in *Doyle* was *Jeffers v. State,* 646 S.W.2d 185 (Tex.Crim.App.1981). The subsequent case of *Adams v. State,* 707 S.W.2d 900 (Tex. Crim.App.1986) declared *Jeffers* overruled to the extent that it conflicted. *Id.* at 903. However, the underpinnings of *Jeffers* are still intact. *Doyle* quoted *Jeffers* and its citation of long established authority as follows:

> When considering a motion to quash, it is not sufficient to say that the accused knew with what offense he was charged; rather, the question presented is whether the face of the instrument sets forth in plain and intelligible language sufficient information to enable the accused to prepare his defense....

661 S.W.2d at 730 (citations omitted). The *Doyle* court further declared:

> Appellant's case is governed by *Jeffers.* The indictment did state the nature of the threat made and the name of the public servant threatened. But like the

indictment in *Jeffers* the indictment here did not specify the manner or means whereby the offense was committed. Appellant's alleged threat could have been conveyed in a number of ways, including: face to face in person, over the phone directly, through a third party, or through the mail. In fact, at trial it was established that the threat against Judge Gibbs was made to Officer Pruitt. Nothing whatsoever in the indictment suggested as much.

> Appellant's motion to quash entitled him to the allegation of facts sufficient to bar a subsequent prosecution for the same offense and sufficient to give him precise notice of the offense with which he was charged. We conclude the trial court erred in overruling appellant's motion to quash.

661 S.W.2d at 730–31 (citations omitted).

Any doubt that *Adams* relieved the State of the long established burden to plead manner and means, as emphasized in *Jeffers,* was dispelled by the subsequent opinion in *DeVaughn v. State,* a burglary case wherein the State pleaded that the defendant entered a habitation "and therein *attempted to commit and committed* theft" without effective consent of the owner. *DeVaughn v. State,* 749 S.W.2d 62, 64 (Tex.Crim.App.1988) (indictment held quashable for failure to describe personal property taken and owner of said personalty; ownership of personalty cannot be presumed to be identical with the ownership of the premises).[3] *DeVaughn* states:

> Although cursory examination of our prior treatment of claims alleging insufficient notice from the face of an indictment may give the impression of inconsistency, a closer analysis reveals that such cases are divisible into categories contingent upon a variety of factors, including, but not limited to, the statutory

---

3. Personalty situated within a premises is more often than not owned by the owner of the premises. Certainly, proof of ownership of a premises would create a reasonable assumption as to ownership of the personalty therein. However, *DeVaughn* makes it clear that a reasonable assumption is insufficient. An indictment suffers from a notice deficiency where it only raises the presumption of ownership; ownership must be specifically pleaded. Likewise, it did not suffice in the case at bar for the indictment to raise the assumption that the threat to kill was oral and that it was directly communicated to the identified victim in a face-to-face encounter; the matter had to be specifically pleaded.

description of the prohibited conduct and *whether the notice deficiency complained of describes an act or omission by the accused.*

*Id.,* at 68 (emphasis added). *DeVaughn* proceeded to quote from *Ferguson v. State,* 622 S.W.2d 846, 851 (Tex.Crim.App. 1981) (on reh.) as follows:

> ... [I]t is clear that even though an act or omission by a defendant is statutorily defined, if that definition provides for more than one manner or means to commit that act or omission, then upon timely request, the State must allege the particular manner or means it seeks to establish.

*DeVaughn,* at 69. By his motion to quash, appellant Hodge sought information as to an act or omission of which he, the accused, was charged. As with the theft pleading in *DeVaughn,* there is more than one manner or means to commit the offense of retaliation: orally, in writing, over the telephone, through a third person, etc. The manner and means must be alleged in response to a proper motion to quash.

On authority of *King v. State,* 594 S.W. 2d 425, 426 (Tex.Crim.App.1980), *DeVaughn* holds:

> [W]hen that aggravated conduct may be directed at a person other than the ultimate victim of the crime alleged, the specification of that person is not an essential element of the underlying offense, but rather a fact necessary to provide notice, to which the accused is entitled, should he request it by means of a timely filed motion to quash.

*DeVaughn,* at 70. *DeVaughn* further declares:

> [I]t is by no means a necessary conclusion that appellant took or attempted to take property from the owner of the premises he was alleged to have entered unlawfully. Thus, once appellant requested the name of the individual from whom he allegedly took property or attempted to take property during a burglary, his constitutional presumption of innocence, coupled with our prior holding

in *King v. State,* supra, and its progeny, mandate that the State provide such information crucial to appellant's defense. *Id.,* at 70. In *Adams,* the notice deficiency was not a manner and means deficiency. The prosecution was for exhibiting obscene material, and the defendant demanded the right to know which of two similar movie films seized by the police would be offered in evidence at his trial. *DeVaughn* has distinguished *Adams* on this basis. It follows that the case before us is governed by *DeVaughn,* not by *Adams.* It likewise follows that the indictment before us was quashable for failure to plead manner and means of communication.

### THE HARM ANALYSIS MUST BE RESOLVED IN FAVOR OF APPELLANT

Clearly, *Adams* requires that no case may be reversed on account of a notice defect in the indictment without undertaking a harm analysis. In *Adams,* the Court of Criminal Appeals found a lack of harm in the State's failure to specify which of the two allegedly obscene movies that had been seized would be placed in evidence from the fact that the acts depicted were virtually identical. *Adams,* 707 S.W.2d at 904. Such analysis is of very little assistance in determining harm for failure of the indictment to allege manner and means. Unfortunately, the *DeVaughn* court elected not to provide any guidance in determining harm; the harm question was remanded to the court of appeals. A single-judge dissent argued no harm on the basis of the overwhelming evidence of guilt.

Our majority has found three entirely separate grounds to declare a want of harm: (1) the fact that appellant was in apparent possession of police reports purportedly relating to the offense charged at 357; (2) the fact that appellant received a "minimal sentence" (at 357); and (3) a conclusion by the majority that appellant had no further use for the information after having decided to enter into a plea bargain at 357.[4]

---

4. The divergent approaches taken by majority and by the *DeVaughn* dissent virtually pre-empt

the field. Here, the majority would deny relief from a notice-deficient indictment wherever the

The majority, at the outset of its discussion concerning harm, acknowledges the well established rule that "[i]n the face of a timely motion to quash, the indictment must allege on its face the facts necessary ... to give the defendant notice of precisely what he is charged with" at 355. The majority's ruling on harm proceeds to demolish this time-honored rule. The majority has notified the State that if it will but hand to the defendant a copy of a police report describing the offense in greater detail, the State has negated any requirement that it plead its case in accordance with the established law. The law of criminal pleading may not so easily be cast into oblivion.

The rule that the probata must follow the allegata is too well recognized to question. Is the majority to be construed as holding that where the defendant is handed a copy of a police report in lieu of a legally sufficient indictment, a directed verdict must ensue if the probata fails to follow the *police report?* Of course not!! A police report is not the functional equivalent of a properly detailed indictment. It necessarily follows that the State cannot so conveniently cure its failure to secure from the grand jury a properly drawn indictment. *Adams* and the *DeVaughn* dissent hold that the evidence, the final argument, the verdict, and the punishment may be reviewed in determining harm. The list may not be expanded to include copies of police reports handed to the defendant; any such ruling virtually eliminates the requirement of a proper criminal pleading.

One of the serious problems in applying a harm analysis to notice deficiencies in the indictment is the fact that the indictment is drawn and presented some time before the evidence is heard. The motion to quash is likewise prepared and presented on behalf of a presumed innocent defendant demanding to know in advance of trial what evidence will be offered against him. Likewise, the trial court must rule thereon without knowing what evidence will be presented. *Adams* and the *DeVaughn* dissent present the message that the evidence when presented, if it be of a certain nature, may cure an erroneous ruling even though neither the presumed innocent defendant nor the trial court knew the nature of the evidence at the time of the ruling.

The problem is further compounded in the case at bar because no live evidence was ever heard, only a conclusory stipulation parroting the words of the indictment. The manner and means of communication of the threat to kill Officer Weeks remains judicially unknown. Thus, we are deprived of a meaningful opportunity to apply a weighing-the-evidence approach indicated by *Adams* and by the *DeVaughn* dissent.

This writer is wholly unwilling to accept the disparaging view of the prosecution manifested by the majority opinion. The majority would apparently take the view that the case was not vigorously prosecuted and that appellant, through strident advocacy or otherwise, managed to wear down a half-hearted prosecution and obtain plea bargain punishment far less than was really justified by the evidence available to the State.

Such approach must be rejected. A better view, based on this scanty record, is that the evidence available to the prosecution was minimal and that the State, even though vigorous, determined, and well-prepared, recognized a strong likelihood of an acquittal and, faced with this bitter alternative, agreed to reduce a possible life sentence down to a two-year term. Any other approach would unjustifiably denigrate our

---

punishment assessed is "minimal." The *De-Vaughn* dissent would deny relief where the evidence is overwhelming. If the tests be combined, it follows that quashal errors are only reviewable if the evidence is weak and the punishment heavy. If both of these approaches be declared proper, it follows that the State has been virtually immunized from the consequences of any failure to present a properly drawn pleading.

This dissent urges that any "minimal sentence" approach to the harm analysis must be applied sparingly and with great caution. It is equally logical to argue in most instances with equal force that a "minimal sentence" demonstrates that in the absence of the complained error, a likelihood existed that the appellant would have been acquitted.

sworn public officials, charged with the duty to zealously prosecute all crimes committed within their jurisdiction. Lacking evidence to the contrary, we must always presume that our officers have fulfilled their duties, both vigorously and in full compliance with the law.

This line of reasoning inevitably leads to the conclusion that the evidence against appellant was weak. The conclusion is fortified by the fact that a mistrial was entered in this case on January 12, 1987 at 355. We have no statement of facts from that trial and know nothing of the evidence adduced. However, we know judicially that mistrials are much less common when the evidence of guilt is overwhelming. Neither, insofar as known, has it ever been held that a defendant must bring forward a statement of facts, not only from the trial where he was convicted but also a statement of facts from a previous trial where no verdict was reached. Neither *Opdahl v. State*, 705 S.W.2d 697 (Tex.Crim.App.1986), nor *Craven v. State*, 613 S.W.2d 488 (Tex. Crim.App.1981), goes to this length.

Appellant Hodge has brought forth a complete statement of facts. The deficiency is not in the statement of facts. It is in the evidence at the trial (a plea hearing is a trial) wherein a conviction resulted. Specifically, the deficiency is in the State's evidence. In the trial court below, the State failed to present overwhelming evidence of guilt or present any other evidence from which we might conclude that appellant sustained no harm from the notice deficiency in the indictment. The most logical deduction that can be taken from this scanty record is that appellant was, indeed, harmed in view of the fact that he sustained a conviction on the basis of weak evidence.

The majority's third reason for its no-harm ruling—that appellant had no need for notice after deciding to enter into a plea bargain—must also be rejected. As pointed out in *Craven*, TEX.CODE CRIM. PROC.ANN. art. 44.02 expressly promises to a criminal defendant that he may, after a plea of guilty or nolo contendere, have an appeal upon "matters which have been raised by written motion filed prior to trial." *Craven*, 613 S.W.2d at 489. By its holding, the majority would completely denude a right expressly provided by the legislature.

Further, we must recognize that the decision to accept the plea bargain came after, not before, appellant's motion was overruled. It is one thing to hold that harm arising from the erroneous refusal to quash a notice-deficient indictment must be weighed in light of the entire record; it is quite another to hold that a strategic decision made by the defendant *after the erroneous ruling has been made* defeats the right to obtain appellate relief from that harm. Certainly, we cannot know on this abbreviated record what considerations impelled the decision on appellant's part to enter into a plea bargain. The fact that the court erroneously overruled his motion to quash could have contributed to that decision. For each of the reasons just pointed out, we must exclude from our harm analysis the fact that appellant decided to enter into a plea bargain. Although the point was not expressly decided therein, it is to be noted that the *Craven* court refused to hold that the mere fact that a plea bargain has been effected would deprive the defendant, through a no-harm analysis, of the right to appeal a notice deficiency in the information.

The foregoing discussion brings into focus a crucial question not yet answered in the recent wave of cases holding that neither error in the indictment nor error in the court's charge to the jury is reversible in the absence of harm. Who has the burden to prove harm or the lack of it? The majority has erroneously held that appellant "must come forward with some factual justification" that affirmatively establishes that he suffered harm. At 357. By logic, the burden must fall upon the State as the beneficiary of an erroneous ruling to show that the defendant was not harmed thereby. After all, it is almost uniformly true that the State has caused or contributed to errors that appear in criminal pleadings. Further, the State has received express notice from the defendant's motions and objections of the existence of the error;

and it has, in the typical instance, resisted the defendant's objections. When the appellate court holds that the trial court erred, sound policy requires that the State demonstrate to the appellate court that the error was harmless; otherwise, it must suffer a reversal.

*Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), is, beyond doubt, the leading American authority on harmless error:

> Certainly error, constitutional error ... casts on someone other than the person prejudiced by it a burden to show that it was harmless. It is for that reason that the original common-law harmless-error rule put the burden on the beneficiary of the error either to prove that there was no injury or to suffer a reversal of his erroneously obtained judgment.

*Id.* at 24, 87 S.Ct. at 828.

It is to be noted that *Chapman* involved both erroneous jury argument and an erroneous charge. *Id.* at 19, 87 S.Ct. at 825. The Supreme Court applied the same standard in both instances, harmless-beyond-a-reasonable-doubt. It is difficult to conceive why any different standard should apply with respect to error concerning a notice deficiency in the indictment. It is the burden of the defendant to call the error to the court's attention through a timely motion to quash and to secure a ruling thereon. It is also the defendant's burden to demonstrate to the appellate court that the trial court's ruling was erroneous. However, when he establishes that the indictment failed to contain the particulars required by law, the burden shifts to the State to demonstrate the lack of harm.

*Chapman* has been incorporated into Texas practice through TEX.R.APP.P. 81(b)(2):

> If the appellate record in a criminal case reveals error in the proceedings below, the appellate court shall reverse the judgment under review, unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment.

Rule 81(b)(2) has been applied in a variety of contexts. It has been specifically applied to the denial of state and federal constitutional rights. The Court of Criminal Appeals has indicated that it is applicable wherever "there is no countervailing procedural rule or statutory provision." *Rose v. State*, 752 S.W.2d 529, 532 (Tex. Crim.App.1988).

Our State Constitution provides that the accused may be tried only upon indictment stating "the nature and cause of the accusation against him." TEX. CONST. art. I § 10. It is provided that no indictment shall be held insufficient "which does not prejudice the substantial rights of the defendant." TEX.CODE CRIM.PROC.ANN. art. 21.19 (Vernon 1966). However, there is no statutory provision fixing the burden to show harm emanating from notice defects in an indictment. It follows that Rule 81(b)(2) is applicable.

On the record before us, the State cannot carry the burden cast by the rule. There is no showing that the evidence was overwhelming. Neither does the record show any other special circumstance reflecting the absence of harm through the State's failure to present a proper criminal pleading.

I dissent. The trial court erred in refusing to require that the indictment specifically plead the manner and means whereby the threat upon which this prosecution rests was communicated. Appellant has sustained the requisite harm to entitle him to a reversal. Alternatively, the State has failed to discharge its burden of showing that no harm ensued. The case should be reversed and remanded.