MCLESTER V STATE



NO. 07-00-0230-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



JANUARY 3, 2001



______________________________




MICHAEL CLIFFORD MCLESTER, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 47TH DISTRICT COURT OF POTTER COUNTY;



NO. 32294-A; HONORABLE DAVID L. GLEASON, JUDGE



_______________________________



Before BOYD, C.J., and REAVIS and JOHNSON, JJ.

 In this proceeding, appellant Michael Clifford McLester seeks to appeal an
adjudication of guilt for the offense of burglary after the trial court found he violated the
terms of his community supervision. Finding no merit to this appeal, we affirm.

 Appellant's original plea of guilty was made on August 13, 1993. The court deferred
adjudication of appellant's guilt conditioned on eight years community supervision under
conditions set out by the court, including the payment of an $800 fine. Upon motion of the
State to revoke his community supervision and adjudicate his guilt, the trial court held a
hearing on October, 5, 1995. Appellant pled true to the State's allegations and on the
prosecutor's recommendation, the court continued his community supervision, adding the
requirement he participate in a drug treatment program called SAFPF.

 Another hearing was held October 19, 1998, on the State's further motion to
adjudicate appellant's guilt, in which it alleged the violation of nine conditions of his
community supervision. The court again continued his community supervision, extending
the term to ten years and additional participation in SAFPF. The State's third motion to
adjudicate guilt, alleging five violations of the conditions imposed on appellant, was held
April 13, 2000. After this hearing, the court adjudicated his guilt and sentenced appellant
to ten years confinement in the Institutional Division of the Texas Department of Criminal
Justice. Hence, this appeal.

 In presenting appellant's appeal, appointed counsel has filed a brief in which he has
certified that, in compliance with Anders v. California, 386 U.S. 738, 744-45, 87 S.Ct. 1396,
18 L.Ed.2d 493 (1967), and Gainous v. State, 436 S.W.2d 137 (Tex.Crim.App. 1969), he
has diligently reviewed the record and determined that, in his opinion, the record reflects
no reversible error or grounds upon which an appeal can be predicated. Thus, he
concludes, the appeal is without merit and is frivolous. In compliance with High v. State,
573 S.W.2d 807, 813 (Tex.Crim.App. 1978), counsel has analyzed the record, made
references to the record, and candidly discussed why, under the controlling authorities,
there is no error in the court's judgment. 

 Counsel has certified that he has served a copy of the brief on appellant and
informed him that, in counsel's view, the appeal is without merit. He has also attached a
copy of a letter by which he notified appellant of his right to review the record and to file
a pro se brief if he wishes to do so. See Johnson v. State, 885 S.W.2d 641, 646
(Tex.App.--Waco 1994, writ ref'd). Appellant has neither filed a pro se brief nor requested
an extension of time within which to do so.

 We have also made our own careful examination of the record to determine if there
are arguable grounds which might support the appeal. See Stafford v. State, 813 S.W.2d
503, 511 (Tex.Crim.App. 1991). We have found no such grounds and agree with counsel
that the appeal is without merit and is, therefore, frivolous. Johnson, 885 S.W.2d at 647. 
Accordingly, the judgment of the trial court is affirmed. We also grant counsel's motion to
withdraw.


 John T. Boyd

 Chief Justice


Do not publish.



ns-serif">Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.


MEMORANDUM OPINION


          Appellant, Martin Mendoza Reynoza, was convicted by a jury of burglary of a
habitation with the intent to commit a felony offense, sexual assault, and was sentenced
to ninety-nine years confinement and fined $5,000. In a single issue, Appellant contends
the State’s evidence at trial was factually insufficient to support his conviction. We affirm.
Background
          On January 16, 2008, Appellant was indicted by a Deaf Smith County Grand Jury 
for committing the offense of burglary of a habitation with the intent to commit a sexual
assault on or about November 24, 2007.
          The following evidence was adduced during a jury trial held September 30 through
October 2, 2008. In the early morning hours of November 24, 2007, Germaine Garza
received a 911 call reporting a break-in and dispatched Officers Tony Martinez and Gabriel
Guerrero, Hereford Police Department, to a residence located on Avenue K. When Officer
Martinez made contact with the victim, L.O., she was crying, scared, and hysterical. She
reported that a Hispanic male in his twenties wearing a hooded sweatshirt had broken into
her house and sexually assaulted her. She indicated she could not see his face because
the room was dark. 
          L.O. was then transported by her daughter to the police station where she gave a
statement to Officer Martinez and described her assailant as a male in his twenties who
was wearing a hood. She also told Officer Martinez that she got a good look at the male,
had never seen him before, and would be able to recognize him if she saw him again. She
also believed her assailant might have been one of her son’s friends who committed the
crime for revenge. She was next transported to an Amarillo hospital to undergo a sexual
assault examination.
          Virginia Young, a registered nurse and certified adult sexual assault examiner,
conducted the examination. Young testified that the victim was crying and upset. She had
suffered abrasions to her knees as well as multiple areas of trauma that were very common
when someone had been sexually assaulted. Young collected swabs of secretions located
in the areas of her vagina, anus, and leg. In her opinion, the victim’s vagina had been
penetrated. 
          Elva Reynoza, Appellant’s wife and the victim’s sister, testified that, at approximately
7:00 a.m. on November 24, 2007, she and Appellant left to pick up her father in Mexico. 
While they were en route, Elva received a telephone call from a family member informing
her that their sister, L.O., had been sexually assaulted. When she informed Appellant of
the call, he responded: “It’s true. I went out of the house to look for drugs. I could not find
any, and I went over there.” They continued to Mexico and picked up her father. When
they returned around midnight, Elva testified she asked Appellant what he was going to do. 
He responded that he was going to turn himself in to the police. 
          Garza testified Appellant and Elva entered the police station and Appellant indicated
he was turning himself in for what happened on Avenue K. Garza called Officer Martinez
who asked Detective Jimmy Stevens to conduct the interview. After Appellant was advised
of his Miranda rights and signed a written waiver of his rights, he gave a videotaped
statement. 
          In his statement, Appellant indicated he drove home from work at 9:00 p.m. on the
night of November 23. He began drinking beer and using cocaine. At home, he finished
drinking a twelve pack of beer. Afterwards, he called L.O. and asked if her husband was
at home. After she indicated her husband was not at home, he hung up. Appellant then
attempted to locate more cocaine but was unsuccessful. He next drove to L.O.’s house
because, “in the past, they had flirted.” He parked in the alley behind the house and, when
he could not open the back door, broke a rear window into the house. As he entered the
house, L.O. was coming from the bedroom yelling and praying. He pushed her into
bedroom and grabbed her from behind. His statement continued as follows:
I already knew what I wanted to do with [L.O.]. [They] fell on the bed [and he]
began to kiss [her] all over her body including her buttocks. I knew I couldn’t
have an erection when I am on drugs. I had on a brown sweater and when
I was kissing [her] I was wearing a hood on my head. We got up and left out
the same window I had broken earlier. I came to the PD while I am sober to
make things right. I know what I did to [L.O.] was wrong. 
 
          Following the interview, Detective Stevens testified Appellant permitted the officers
to obtain samples of his DNA. After the statement was typed and signed, Appellant was
placed under arrest. 
          After the arrest, Officer Richard Jimenez accompanied Appellant’s wife to her home
where he retrieved a brown, hooded jacket. At trial, Elva identified it as the jacket worn by
her husband the night of November 23, when he left the house to buy some beer and
drugs. She also testified that contact between Appellant and the victim was very limited
during the past five to six years. 
          Officer Guerrero testified that, at approximately 12:30 a.m. on November 24, 2007,
he had observed a red pickup similar to Appellant’s pickup in L.O.’s driveway. He also
testified that the pickup appeared similar to a pickup he observed in the driveway the night
before. 
          L.O. testified that, on November 23, 2007, she went to bed after reading and fell
asleep about 11:00 p.m. She left a small light on in the bathroom situated outside her
bedroom and cracked open her bedroom door. She later received a call from someone
asking for her husband. After she informed the caller he was not at home and asked if it
wasn’t a little late to be calling, the caller hung up. While trying to go to sleep, she heard
a loud bang like something had been broken. She arose from bed, but could not move. 
Although the room was dark, she could tell her assailant was wearing a hood and blue
jeans. He began undressing her and told her to remain still or he would kill her. He also
jabbed what she thought was a gun in her side. Despite her attempts to fend off her
assailant and free herself, he sexually assaulted her and left through the broken window
in the rear of the house.
          L.O. further testified that, over the past six years, she had never had a relationship
with Appellant, her brother-in-law. At most, she testified there were several chance
meetings in the street while driving but no communication. 
          Steven Brent Hester, a serologist for the DPS crime laboratory in Lubbock, testified
that the sperm fraction of L.O.’s labial swabs was consistent with Appellant’s DNA profile. 
He also testified, to a reasonable degree of certainty, Appellant’s DNA was a match for the
samples taken in, and on, L.O.



          After both parties rested, the trial court instructed the jury, without objection, that
they were the “exclusive judges of the facts proved, the weight of the evidence and the
credibility of the witnesses.” Thereafter, the jury returned a verdict of guilty and Appellant
filed this appeal. 
Discussion
          Appellant asserts the evidence at trial was factually insufficient to support his
conviction for burglary of a habitation with intent to commit the felony offense of sexual
assault. In support, Appellant points to his written statement wherein he indicated that,
because he was on drugs, he could not get an erection, and the victim’s inconsistent
descriptions of her assailant given at her house and later at the police station.



 
          I.        Standard of Review
          When conducting a factual sufficiency review, we begin with the assumption that the
evidence is legally sufficient under Jackson v. Virginia.


 See Laster v. State, 275 S.W.3d
512, 518 (Tex.Crim.App. 2009). Evidence that is legally sufficient, however, can be
deemed factually insufficient in either of two ways: (1) the evidence supporting the
conviction is so weak that the jury’s verdict seems “manifestly unjust,” “shocks the
conscience,” or “clearly demonstrates bias,” or (2) considering conflicting evidence, the
factfinder’s verdict is “against the great weight and preponderance of the evidence.” Id. 
In a factual sufficiency review, the reviewing court must consider all of the evidence in a
neutral light (i.e., without the prism of “in the light most favorable to the prosecution”). 
Steadman v. State, 280 S.W.3d 242, 246 (Tex.Crim.App. 2009); Laster, 275 S.W.3d at
518.
          Further, in reviewing a jury’s decision, we are mindful that the jury is the sole judge
of the credibility of the witnesses and the weight to be given their testimony. Lacon v.
State, 253 S.W.3d 699, 705 (Tex.Crim.App. 2008). A jury is entitled to believe or
disbelieve some or all of a witness’s testimony, even when that testimony is
uncontradicted. Hernandez v. State, 161 S.W.3d 491, 501 (Tex.Crim.App. 2005). 
Therefore, appellate courts should afford almost total deference to a jury’s decision when
that decision is based upon an evaluation of credibility; Lancon, 253 S.W.3d at 705,
because, being present to hear the testimony, as opposed to relying on a cold record, the
jury is in the better position to judge the credibility of the witness. Marshall v. State, 210
S.W.3d 618, 625 (Tex.Crim.App. 2006).
          II.       Burglary With Intent To Commit A Sexual Assault
          A persons commits the offense of burglary if (1) without the effective consent of the
owner, (2) the person enters a habitation, or building (or any portion of a building) (3) not
then open to the pubic, (4) with the intent to commit a felony, theft, or an assault. Tex.
Penal Code Ann. § 30.02(a)(1) (Vernon 2003). A person commits the offense of sexual
assault if he or she (1) intentionally or knowingly (2) causes the penetration of the anus or
female sexual organ of another person by any means or causes the sexual organ of
another person to contact or penetrate the mouth, anus, or sexual organ of another person,
including the actor (3) without that person’s consent. Id. at § 22.011(a)(1) (A) & (C). A
sexual assault under subsection (a)(1) is “without consent” of the other person “if the actor
compels the other person to submit or participate by the use of physical force or violence.” 
Id. § 22.011(b)(1).
          The indictment charged Appellant with entering L.O.’s habitation with intent to
commit sexual assault, and the State was therefore required to prove Appellant had the
intent to commit a sexual assault when he entered L.O.’s residence. See DeVaughn v.
State, 749 S.W.2d 62, 65 (Tex.Crim.App. 1988). The jury could have inferred Appellant
possessed the requisite intent from either his words, acts, or conduct and the surrounding
circumstances. Guevara v. State, 152 S.W.3d 45, 50 (Tex.Crim.App. 2004); Wilkerson
v. State, 927 S.W.2d 112, 115 (Tex.App.–Houston [1st Dist.] 1996, no pet.). 
          Appellant contends the evidence is factually insufficient because his written
statement to the police states that he and L.O. had been flirting for years and he knew
when he entered L.O.’s house he could not have an erection because he was on cocaine. 
He also contends L.O.’s testimony was not credible because of inconsistencies between
her trial testimony and statements given to the police and others shortly after she was
assaulted.
          Appellant’s statement indicates he drove to L.O.’s house because, “in the past, they
had flirted.” After he broke in through the rear window, “[he] already knew what [he]
wanted to do with [L.O.].” He also stated that he was wearing a hood on his head while he
was kissing her. 
          L.O. testified Appellant forcibly entered her residence in the early morning hours
while she was sleeping by breaking a window facing the alley and grabbed her in a
darkened bedroom. She testified that, while wearing a hood over his face, he forcibly
removed her undergarments and commanded her to not move under threat of death. He
pushed her on the bed while telling her he wanted “pussy.” He put his fingers in her
vagina, touched her vagina with his mouth, attempted to penetrate her anus, and
penetrated her vagina. He then left through the broken window without taking anything 
from her home. Subsequent DNA testing confirmed that labial swabs taken in, and on,
L.O.’s body were consistent with Appellant’s DNA profile.
          Young testified L.O. had sustained injuries to her knees as well as multiple areas
of trauma that were very common when someone had been sexually assaulted and, in her
expert opinion, L.O.’s vagina had been penetrated. Detective Stevens documented
bruising to L.O.’s knees as well as upper and lower leg areas. Officers at the residence
immediately after the attack described L.O. as crying, scared, and hysterical. Her daughter
described L.O. as shaken, scared, and unable to speak when she was transporting her to
the police station and, at the time of her assault examination, Young described L.O. as
crying and upset. 
          Viewing the evidence in a neutral light, we cannot conclude that the evidence
supporting Appellant’s guilt of the offense of burglary of a habitation with the intent to
commit sexual assault is so weak as to render the jury’s verdict clearly wrong and unjust
or that the verdict is against the great weight of the evidence.


 Assuming the jury chose
to believe L.O.’s version of events or, otherwise found her credible, the jury could
reasonably infer from Appellant’s actions that he entered her house with the intent to
sexually assault her. See Moore v. State, 54 S.W.3d 529, 540 (Tex.App.–Fort Worth 2001,
pet. ref’d). Thus, we hold that the evidence is factually sufficient to support Appellant’s
conviction. Appellant’s single issue is overruled.
Conclusion
The trial court’s judgment is affirmed. 
 
                                                                           Patrick A. Pirtle

                                                                                 Justice



Do not publish.