# NO. 12-14-00127-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *THOMAS DARRELL HOWELL,* <br> *APPELLANT* | § | *APPEAL FROM THE 420TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* <br> *APPELLEE* | § | *NACOGDOCHES COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Thomas Darrell Howell appeals his convictions for two counts of burglary of a habitation, violation of a protective order, and retaliation. In one issue, Appellant contends that the evidence is insufficient to support the verdict as to any of the convictions. We affirm.

## BACKGROUND

Appellant was charged by indictment with two counts of burglary of a habitation, violation of a protective order, and retaliation, and pleaded "not guilty" to all four charges. The matter proceeded to a jury trial.

The evidence at trial showed that Appellant and the complaining witness, whom the indictment refers to as "C.M.O.," had been in a dating relationship since 2011. On January 14, 2013, C.M.O. reported to the police that Appellant had assaulted her. She obtained a magistrate's protective order prohibiting Appellant from, among other things, going near her residence or committing family violence against her. On January 25, 2013, while the protective order was still in effect, Appellant arrived at C.M.O.'s house and began asking why she had not dropped the charges. Appellant walked in through an open door and assaulted C.M.O. for hours. He restricted her breathing by putting his hands on her throat and face, sexually assaulted her,

and told her that he was going to kill her and her children because she had filed the assault charge against him.

The next day, with the help of her landlord, C.M.O. was able to get away from Appellant. Appellant fled the residence, and C.M.O. went to stay at a neighbor's house for a while, fearing that Appellant might come back. About a week later, C.M.O. returned to her house with a friend to retrieve some papers. They found Appellant in the house, and he fled again. Some items of food and pictures of C.M.O.'s children were missing.

The State brought several criminal charges against Appellant. He pleaded "not guilty," and the matter proceeded to a jury trial. The jury found Appellant guilty of two burglary charges, violation of a protective order, and retaliation. Appellant pleaded true to a prior felony conviction of robbery, enhancing the punishment range for each crime. The jury assessed his punishment at imprisonment for thirty-five years for the first burglary, ten years for the second burglary, ten years for the violation of a protective order, and twenty years for retaliation. The trial court sentenced Appellant accordingly, and this appeal followed.

SUFFICIENCY OF THE EVIDENCE

In his sole issue, Appellant contends that the evidence is insufficient to support his convictions.

## Standard of Review and Applicable Law

Legal sufficiency of the evidence is the constitutional minimum required by the Due Process Clause of the Fourteenth Amendment to sustain a criminal conviction. *See Jackson v. Virginia*, 443 U.S. 307, 315-16, 99 S. Ct. 2781, 2786-88, 61 L. Ed. 2d 560 (1979); *Escobedo v. State*, 6 S.W.3d 1, 6 (Tex. App.—San Antonio 1999, pet. ref'd); *see also Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). The standard for reviewing a legal sufficiency challenge is whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *see also Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). The evidence is examined in the light most favorable to the verdict. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Johnson*, 871 S.W.2d at 186. A successful legal sufficiency challenge will result in rendition of an acquittal by the reviewing court. *See Tibbs v. Florida*, 457 U.S. 31, 41-42, 102 S. Ct. 2211, 2217-18, 72 L. Ed. 2d 652 (1982). This familiar standard gives full play to the responsibility of

2

the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789.

Under this standard, we may not sit as a thirteenth juror and substitute our judgment for that of the fact finder by reevaluating the weight and credibility of the evidence. *See Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999); *see also Brooks*, 323 S.W.3d at 899. Instead, we defer to the fact finder's resolution of conflicting evidence unless the resolution is not rational. *See Brooks*, 323 S.W.3d at 899-900; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). The duty of a reviewing court is to ensure that the evidence presented actually supports a conclusion that the defendant committed the crime charged. *See Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

The sufficiency of the evidence is measured against the offense as defined by a hypothetically correct jury charge. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge would include one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id*.

## Burglary of a Habitation on January 25, 2013

To support Appellant's conviction for burglary of a habitation on January 25, 2013, the State was required to prove that Appellant, (1) without C.M.O.'s effective consent, (2) intentionally or knowingly entered her habitation, and (3) committed or attempted to commit sexual assault, retaliation, or assault family violence with occlusion. *See* TEX. PENAL CODE ANN. § 30.02(a)(3) (West 2011).

Appellant argues that the State failed to prove that (1) Appellant entered C.M.O.'s home "with the intent to commit anything" or that (2) C.M.O. received an injury as a result of Appellant's actions. We note that while a conviction for burglary under penal code section 30.02(a)(1) requires proof of intent at the time of entry, a conviction—such as Appellant's— under penal code section 30.02(a)(3) does not. *See DeVaughn v. State*, 749 S.W.2d 62, 65 (Tex. Crim. App. 1988). Here, the State needed only to show that Appellant entered C.M.O.'s home without her consent and while inside committed one or more of the named acts.

3

C.M.O. conceded that Appellant had lived with her previously. But a protective order was in effect on the date of the offense. And according to C.M.O., Appellant was not living there at the time.

Appellant and C.M.O. offered differing versions of how Appellant came to be at C.M.O.'s house that day. According to C.M.O., on January 25, 2013, Appellant asked her to meet him at a park in Nacogdoches, and she did. They talked and agreed to get back together if Appellant "got the help he needed."

Later that night, after C.M.O. had put her children to bed, she was on her porch smoking a cigarette when Appellant arrived, unannounced and uninvited. Appellant repeatedly asked C.M.O. why she had not dropped the charges against him. When Appellant came onto the porch, C.M.O. ran inside the house to get her cell phone to call the police. Appellant entered the house without C.M.O.'s consent, took her phone, and assaulted her. C.M.O. repeatedly denied giving Appellant permission to enter her home.

While inside, Appellant continued to question C.M.O. about why she never dropped the charges. She tried to tell him that she would drop them, but he repeatedly hit her in the face until "everything just went black." The hitting and questioning went on for hours. At one point, Appellant tried to choke C.M.O. on the floor. He placed his hands around her throat and then put his hand over her face, restricting her breathing. She convinced him to let her up, and then he forced her to perform oral sex followed by sexual intercourse with him. After the sexual intercourse, Appellant told C.M.O. that he was going to kill her and her children because she had filed charges against him.

The next morning, Appellant and C.M.O. took C.M.O.'s children to the school bus stop and then returned to the house. A few hours later, C.M.O.'s landlord, Kimberly Freeman, called. Appellant returned C.M.O.'s phone to her so that she could speak to Freeman. Freeman sensed that something was wrong, so she and her husband called 911. Freeman related to C.M.O. that they had called 911, and C.M.O. informed Appellant that the police were on their way. Appellant began to hide in the closet, and C.M.O. took that opportunity to exit the residence. C.M.O. ran to Freeman's vehicle.

According to Freeman, C.M.O. clearly exhibited injuries consistent with having been beaten. One of the deputies investigating the incident noted that C.M.O. had several injuries,

4

including abrasions, marks, and bruising to her eyes and face. Photographs of C.M.O. showed that she had sustained injuries.

According to Appellant's version of events, he was living with C.M.O. in January of 2013. His mother also testified that he and C.M.O. were living together. Appellant stated that he was planning to move out, and C.M.O. was upset that he was leaving. He denied assaulting C.M.O. on January 14, 2013, but he was arrested based on her complaint and spent several days in jail.

Appellant further testified that on January 24, 2013, he and C.M.O. met at a mall so she could return his clothes. From there, they went to a restaurant and then a park. C.M.O. told Appellant that she had a fight with one of her neighbors. They ran some errands. Eventually, Appellant agreed to stay with C.M.O., and the two of them went "home" to C.M.O.'s house. According to Appellant, he and C.M.O. did not argue, he did not assault C.M.O., and they had consensual sexual relations that night. That same night, he said, C.M.O. got into another fight with her neighbor.

Having examined the evidence in the light most favorable to the verdict, we conclude that the evidence is sufficient to prove Appellant committed the offense of burglary of a habitation on or about January 25, 2013. *See Brooks*, 323 S.W.3d at 899. The jury was free to disbelieve Appellant and believe C.M.O.'s testimony regarding the events of that day. *See id.* at 899-900. A rational trier of fact could have found that Appellant entered C.M.O.'s home without her consent and committed or attempted to commit any or all of the underlying offenses. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789. Therefore, we conclude that the evidence is legally sufficient to support Appellant's conviction for burglary of a habitation on or about January 25, 2013. Accordingly, we overrule Appellant's sole issue as to that conviction.

**Protective Order Violation**

Appellant contends that the evidence is legally insufficient to support his conviction for violation of a protective order, but he provides no specific argument. To support the conviction for the offense as alleged in the indictment, the State was required to prove that (1) Appellant knowingly or intentionally committed family violence—specifically assault—against C.M.O. (2) in violation of an order issued by a magistrate judge pursuant to Article 17.292 of the Texas Code of Criminal Procedure. *See* TEX. PENAL CODE ANN. § 25.07 (West Supp. 2014). Proof of

5

a defendant's knowledge of the protective order is required for conviction.  *See **Harvey v. State***, 78 S.W.3d 368, 373 (Tex. Crim. App. 2002).

The term "family violence" includes "dating violence." TEX. FAM. CODE ANN. § 71.004 (West 2014).  "Dating violence" includes an assault, other than a defensive measure to protect oneself, committed against a victim with whom the actor has or has had a dating relationship. TEX. FAM. CODE ANN. § 71.0021 (West 2014).  Both Appellant and C.M.O. testified that Appellant and C.M.O. had been in a dating relationship since 2011.  They stated that their relationship was of an intimate nature and that they had lived together at times during the relationship.  Thus, any assault by Appellant against C.M.O. constitutes family violence.

C.M.O. testified that on January 14, 2013, she contacted the police after Appellant assaulted her by placing his arm around her neck until she passed out.  The police arrested Appellant.  C.M.O. sought and obtained an emergency protective order against him.  The protective order contains Appellant's signature, signifying his acknowledgment that he received a copy of the order.  It also contains the signature of the Nacogdoches County magistrate who issued the order, affirming that a copy was personally delivered to Appellant on January 15, 2013.  The order expressly prohibits Appellant from committing violence against C.M.O. A certified copy of the order was admitted into evidence.

C.M.O. testified that on January 25, 2013, Appellant struck her repeatedly about the head and face.  Other evidence corroborated C.M.O.'s testimony. Freeman and one of the deputies investigating the incident testified that they saw C.M.O.'s injuries.  And photographs of the injuries were admitted into evidence.

In the light most favorable to the verdict, the evidence shows that a protective order was issued against Appellant, the order prohibited violence against C.M.O., Appellant received a copy of the order, and he violated the order by assaulting C.M.O.  We conclude that the evidence is sufficient to support the jury's resolution that Appellant is guilty of violation of a protective order.  *See **Brooks***, 323 S.W.3d at 899.  Accordingly, we overrule Appellant's sole issue as to that conviction.

**Retaliation**

To support Appellant's conviction for retaliation as alleged in the indictment, the State was required to prove that Appellant intentionally or knowingly threatened to harm C.M.O. by

an unlawful act—specifically murder—in retaliation for or on account of her status as a person who had reported the occurrence of a crime. TEX. PENAL CODE ANN. § 36.06 (West 2011).

C.M.O. testified that on January 25, 2013, Appellant told her that he had a whole week to think about everything and that the only way he could get out of the assault charge was to kill her. He said that he was going to kill her and her children as well because they had seen him. A rational trier of fact could have found that this was a threat in retaliation for or on account of her status as a person who had reported the occurrence of a crime.

Having examined the evidence in the light most favorable to the verdict, we conclude that the evidence is sufficient to prove Appellant committed the offense of retaliation. *See **Brooks***, 323 S.W.3d at 899. Accordingly, we overrule Appellant's sole issue as to that conviction.

## Burglary of a Habitation on January 31, 2013

To support Appellant's conviction for burglary of a habitation on January 31, 2013, the State was required to prove that Appellant, (1) without C.M.O.'s effective consent, (2) intentionally or knowingly entered her habitation, and (3) committed or attempted to commit theft of property, specifically food and photographs. TEX. PENAL CODE ANN. § 30.02(a)(3) (West 2011).

C.M.O. testified that about a week after the first burglary, she and a friend returned to her house to gather some of her belongings. As she was walking through her house, she saw that her shower curtain was closed. Her friend pulled the shower curtain back and found Appellant inside the bathtub. C.M.O. ran out of the house and contacted law enforcement. Once the deputies arrived, C.M.O. went back into her house and discovered that food and pictures were missing. C.M.O. had not given Appellant permission to enter her home. C.M.O.'s friend related a similar story and identified Appellant as the person he saw in the bathtub that day.

Appellant, on the other hand, testified that he was not in C.M.O.'s home that day. According to Appellant, he was at C.M.O.'s neighbor's home from January 25, 2013, until February 1, 2013. On February 1, he walked to C.M.O.'s mailbox and waited there until the police arrived and arrested him. In contrast, a Nacogdoches County sheriff's deputy testified that he was involved in a search for Appellant on January 31, 2013. At about 4:00 a.m. on February 1, the deputy went inside C.M.O.'s home and arrested Appellant after he found him in bed asleep.

Having examined the evidence in the light most favorable to the verdict, we conclude that the evidence is sufficient to prove Appellant intentionally entered C.M.O.'s habitation without her effective consent and committed theft of property. *See **Brooks***, 323 S.W.3d at 899. The jury's resolution of the conflicting evidence was rational. *See **id.*** at 899-900. Thus, we hold that the evidence is sufficient to support Appellant's conviction for burglary of a habitation on or about January 31, 2013. Accordingly, we overrule Appellant's sole issue as to that conviction.

## DISPOSITION

Having overruled Appellant's sole issue as to each of his convictions, we ***affirm*** the trial court's judgment.

**BRIAN HOYLE**
Justice

Opinion delivered August 5, 2015.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**AUGUST 5, 2015**

**NO. 12-14-00127-CR**

**THOMAS DARRELL HOWELL,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 420th District Court
of Nacogdoches County, Texas (Tr.Ct.No. F1320262)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*