

# NUMBER 13-23-00351-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

CHRISTOPHER JOSEPH DOWNUM,                                    Appellant,

v.

THE STATE OF TEXAS,                                          Appellee.

## ON APPEAL FROM THE 36TH DISTRICT COURT
## OF ARANSAS COUNTY, TEXAS

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Tijerina and Peña**
**Memorandum Opinion by Justice Peña**

Appellant Christopher Downum appeals his convictions for burglary of a habitation, a second-degree felony, *see* TEX. PENAL CODE ANN. § 30.02(c)(2), and unauthorized use of a vehicle, a state jail felony. *See id*. § 31.07. After a jury returned verdicts of guilty, the trial court sentenced Downum to three years' imprisonment for burglary of a habitation,

and 622 days' imprisonment for unauthorized use of a vehicle, with the sentences to run concurrently. By one issue, Downum argues that the evidence was insufficient to support his convictions. We affirm.

## I. BACKGROUND

In a two-count indictment, Downum was charged with burglary of a habitation, *see id.* § 30.02(c)(2), and unauthorized use of motor vehicle. *See id*. § 31.07. As to count one, the indictment alleged that "on or about the 15th day of October, 2021," Downum "did then and there intentionally and knowingly enter a habitation, without the effective consent of Charles Pentland, the owner thereof, and attempted to commit or committed theft of property, namely keys, owned by Charles Pentland." As to count two, the indictment alleged that "on or about the 15th day of October, 2021," Downum "did then and there intentionally operate a motor-propelled vehicle, namely an automobile[,] without the effective consent of Charles Pentland, the owner thereof."

A jury trial commenced on June 28, 2023, at which the following evidence was adduced. Pentland testified that he was the owner of certain property located in Aransas Pass, Texas. Pentland's property consists of three separate lots. As of October 2021, on lot one, there was a "white mobile home" which Pentland had rented to Christina Downum in July of that year. Pentland testified that he knew Downum to be Christina's father, and that Downum would sometimes stay with Christina in violation of the lease agreement. On lot two, there was a "[t]urquoise cottage" in which Pentland resided. Finally, on lot three there was a recently constructed "red house" that was vacant.

Pentland testified that on or about September 21, 2021, he was injured in an accident and hospitalized. Pentland did not return to his home until October 29, 2021.

2

After his accident, Pentland tasked his handyman Apollo Obuszewski with watching over his property, as he would occasionally do when Pentland was out of town. Pentland testified that Obuszewski was the only person authorized to enter his property or use his vehicles. Pentland further explained that because he was hospitalized unexpectedly, he did not have time to properly store his keys to his houses or vehicles and had "kept the keys to [his] RV and the key to [his white Ford] pickup and the keys to [his] red house in a bowl right besides [his] TV by the couch."

Obuszewski testified that while Pentland was in the hospital he would check on Pentland's residence "[e]very day, if not every other day," and that on October 15, 2021, he called the police because he had noticed that the television was on inside Pentland's home, which was unusual given that Pentland was in the hospital and the television was off when Obuszewski checked on the home just the night before. After the police responded, Obuszewski called again to advise that a window had been broken in the back of Pentland's home. Obuszewski testified that he called the police a third time after he encountered Downum on the property.

Officer Michael Persian with the Aransas Pass Police Department responded to Pentland's property. Persian testified that the police were first called to the residence because "a person who was acting as an agent for the owner believed that somebody had made entry into the property while the owner was in the hospital. He believed that that person may still be in the residence." A short while later, a second call came in through dispatch, in which "the agent noticed a window was broken and I believe there was some criminal mischief or damage that had occurred." During this "second callout," Persian observed a broken window at Pentland's home. At this time, Persian also secured

3

the houses located on lots two and three, making sure the doors were locked. Persian was then called to the residence a third and final time hours later, where he encountered Downum. During this third callout, Persian also discovered that one of the doorknobs of Pentland's home had a hole drilled through it.

Persian testified that Downum "appeared to be exiting" the white mobile home located on lot one and walked toward the police. Downum then "stated that the RV was his, when he was asked if it was his." Downum also represented as to the "property in general" that "he had rights to all of it and that he was heir to most everything." Officer Terry Camack II, who accompanied Persian, testified:

> [W]e got called out there in the evening, me and [Persian] went through the teal building and red building, cleared it. No one was in there. We focused our attention to the RV. While [Persian] was checking the RV, I was standing behind. . . . [Downum] approaches asking, what are we doing, that that's his RV and that he's the heir to everything on the property.

Downum notified police that he had keys in his pocket. A search incident to arrest uncovered numerous keys in Downum's possession. After Persian and other officers tested the keys, they confirmed that one of the keys in Downum's possession was for Pentland's RV, one was for Pentland's "white Ford F-150," and one was for the red house located on lot three. While Persian was testing keys on Pentland's residence, he "noticed the bottom door handle lock had been drilled or punched" on one of the doors. Persian confirmed that none of the keys in Downum's possession opened the doors to Pentland's home.

The State introduced police body camera footage into evidence, including certain still images taken from the video. A still image from the first callout depicts a red vehicle parked directly in front of Pentland's home on lot two with no vehicles parked between

4

Pentland's home and the red house on lot three. Still images from the third callout, which occurred about six hours later, show that Pentland's white RV is parked in front of some trees located between Pentland's residence and the red house on lot three.

According to the State's theory of the case at trial,[1] although it was unclear when Downum acquired the keys, Downum's possession of the keys and his statements, along with relevant testimony regarding the television in Pentland's home and where the RV was parked, supported a verdict of guilty as to both counts. The jury returned a verdict of guilty. This appeal followed.

## II.    SUFFICIENCY OF THE EVIDENCE

Downum argues that the evidence in the case was insufficient to support either conviction. As to count one, Downum argues as follows:

> [Downum] was found with a set of keys to Mr. Pentland's properties and vehicles, but this does not answer the question of how [Downum] came into possession of the keys, nor can it prove he entered the residence. The doors were locked when police arrested [him] and there is no evidence [he] went in and out through the broken, jagged glass window-hole. This evidence fails to prove the element of entry into Mr. Pentland's residence.

As to count two, Downum argues as follows:

> A burden the State had on Count [two] was to prove [Downum] operated the Volkswagen RV. Again, [Downum] had a key to the RV, and was present on the property his daughter was living at on October 15, 2021, but [his] mere presence does not establish [he] operated the RV. More importantly, [neither] Mr. Obuszewski nor the police officers ever saw anyone driving, inside, or even near the RV. This evidence fails to prove the element that [Downum] operated the RV.

## A.    Standard of Review & Applicable Law

"Under the Due Process Clause, a criminal conviction must be based on legally

---

[1] The State did not file an appellee's brief in this case.

sufficient evidence." *Harrell v. State*, 620 S.W.3d 910, 913 (Tex. Crim. App. 2021) (citing *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015)). Evidence is legally sufficient if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Joe v. State*, 663 S.W.3d 728, 731–32 (Tex. Crim. App. 2022) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "For the evidence to be sufficient, the State need not disprove all reasonable alternative hypotheses that are inconsistent with the defendant's guilt." *Wise v. State*, 384 S.W.3d 900, 903 (Tex. Crim. App. 2012). Rather, under a legal sufficiency review, we view the evidence in the light most favorable to the verdict, while recognizing that "[t]he trier of fact is responsible for resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences from basic facts to ultimate facts." *Joe*, 663 S.W.3d at 732; *see Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010) (noting that "the reviewing court is required to defer to the jury's credibility and weight determinations"). Further, "[i]t is not necessary that the evidence directly prove the defendant's guilt; circumstantial evidence is as probative as direct evidence in establishing a defendant's guilt, and circumstantial evidence can alone be sufficient to establish guilt." *Nisbett v. State*, 552 S.W.3d 244, 262 (Tex. Crim. App. 2018) (citations omitted). "Each fact need not point directly and independently to guilt if the cumulative force of all incriminating circumstances is sufficient to support the conviction." *Id*.

We measure the evidence produced at trial against the essential elements of the offense as defined by a hypothetically correct jury charge. *David v. State*, 663 S.W.3d 673, 678 (Tex. Crim. App. 2022) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "A hypothetically correct jury charge 'accurately sets out the law, is

6

authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Id.* (quoting *Malik*, 953 S.W.2d at 240). The "law" as "authorized by the indictment" includes the statutory elements of the offense as modified by the charging instrument. *Curry v. State*, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000).

As to count one, a hypothetically correct jury charge would require the State to prove beyond a reasonable doubt that Downum (1) intentionally or knowingly[2]; (2) without the effective consent of the owner; (3) entered a habitation; (4) and attempted to commit or committed theft of property, namely, keys owned by Pentland. *See* TEX. PENAL CODE ANN. § 30.02(a)(3). As to count two, a hypothetically correct jury charge would require the State to prove the following elements beyond a reasonable doubt: Downum (1) intentionally or knowingly, (2) operated, (3) another's motor-propelled vehicle, (4) without the effective consent of the owner. *Id*. § 31.07(a); *see Denton v. State*, 911 S.W.2d 388, 390 (Tex. Crim. App. 1995) (en banc) (finding that the term "operate" in the unauthorized use of a motor vehicle statute should be interpreted the same as the term "operate" in the driving while intoxicated statute, and providing that "the totality of the circumstances must demonstrate that the defendant took action to affect the functioning of his vehicle in a manner that would enable the vehicle's use").

---

[2] Although the face of the burglary statute does not require an intentional or knowing mental state to accompany a defendant's entry into a habitation, the Texas Court of Criminal Appeals has held that "[i]n order to establish the commission of the offense of burglary of a habitation, the evidence must show 'that the entry was either knowingly or intentionally done.'" *McIntosh v. State*, 297 S.W.3d 536, 543 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) (quoting *DeVaughn v. State,* 749 S.W.2d 62, 64 n.3 (Tex. Crim. App. 1988)). Downum does not challenge this language, which was included in the indictment and jury charge.

7

**B.      Discussion**

As to count one, Downum argues that "[t]here is no affirmative evidence that any particular person entered Mr. Pentland's home, and no one saw [Downum] in the house." Downum implies that the State was required to show how, exactly, Downum entered Pentland's residence. For example, Downum complains that no witness testified that the door with the drilled hole on the doorknob was "operable," and he argues that it would not have been physically possible for him to have entered the home through the "small and jagged" hole in the window.

Downum is mistaken to suggest that the State had to prove the manner and means of entry into Pentland's home. The State is only required to prove that entry into the habitation was made. *See* TEX. PENAL CODE ANN. § 30.02(a)(3); *Reyes v. State*, 422 S.W.3d 18, 24 (Tex. App.—Waco 2013, pet. ref'd) ("Direct evidence of entry is not required; that element may be established by inference, just as inferences may be used to prove the elements of any other offense. A defendant's unexplained possession of property recently stolen in a burglary permits an inference that the defendant is the one who committed the burglary." (citing *Poncio v. State*, 185 S.W.3d 904, 905 (Tex. Crim. App. 2006))). The Texas Court of Criminal Appeals has explicitly noted that to sustain a conviction for burglary of a habitation, "a defendant's unexplained possession of property recently stolen in a burglary permits an inference that the defendant is the one who committed the burglary." *Poncio,* 185 S.W.3d at 905 (sustaining a conviction where the evidence only showed that "someone entered the victim's home without the victim's consent and stole two guitars," and that appellant "pawned the guitars at a pawnshop less than a mile away from victim's home"). Downum's unexplained possession of the keys

8

taken from Pentland's home permitted a rational trier of fact to infer that Downum is the one who committed the burglary, *see id*., and although there was no direct evidence of entry, the "cumulative force of all [the] incriminating circumstances" in the case was sufficient to satisfy the State's burden. *See Nisbett*, 552 S.W.3d at 262.

As to count two, Downum admits that the State "establish[ed] that [Downum] was present at his daughter's rental property, that [Downum] was found with keys to the Volkswagen RV, and presented testimony that [Downum] claimed heirship to the RV." Downum argues, however, that the State failed to show that he "was the person who operated the RV. [Downum's] mere presence on the date of this arrest at his daughter's rental property does not establish [Downum] operated the RV." Downum continues, "[m]ore importantly, [neither] Mr. Obuszewski nor the police officers ever saw anyone driving, inside, or even near the RV on October 15, 2021."

The State was not required to provide direct evidence that Downum operated the RV. *See Nisbett*, 552 S.W.3d at 262. For example, in *Bailey v. State*, appellant was convicted of unauthorized use of a motor vehicle in Hopkins County, even though the direct evidence established only that the appellant had driven the vehicle in Hunt County. 988 S.W.2d 274, 275 (Tex. App.—Texarkana 1998, pet. ref'd). The court of appeals concluded that "[a]lthough there is no direct evidence that Bailey drove the 1981 sedan in Hopkins County, the circumstantial evidence that he did so is very strong," including the fact that an investigator "saw the vehicle in Bailey's front yard" in Hopkins County, and later "observed that the vehicle had been moved to Bailey's back yard." *Id*.

In *Kirsch v. State*, one court of appeals noted that a jury could rely on circumstantial evidence alone to satisfy the operation element of the driving while intoxicated statute

9

even though "no witness saw the [vehicle] running." 366 S.W.3d 864, 868 (Tex. App.—Texarkana 2012, no pet.); *see also* BAKER & SIMPSON, 50 TEX. PRAC. SERIES § 1:3 (2024 ed.) ("Proof that a defendant 'operated' a motor vehicle while intoxicated may be established by circumstantial evidence. The State is not required to prove that any person actually saw the defendant operate the motor vehicle if there is sufficient circumstantial evidence to support a conviction."). The court of appeals reasoned that although it was debatable whether the direct evidence satisfied the operation element,

> the jury was not constrained from looking at circumstantial evidence, which alone can be sufficient to establish guilt. There were no businesses or houses near the intersection, and Kirsch was in a lane of a public highway. The jury was free to draw reasonable inferences from the totality of these facts that Kirsch had driven the motorcycle to that place, and thus had operated the motorcycle while intoxicated. Based upon the totality of the circumstances, we find the evidence legally sufficient to demonstrate Kirsch "took action to affect the functioning of his vehicle in a manner that would enable the vehicle's use."

*Kirsch*, 366 S.W.3d at 868 (citations omitted); *see also Ewing v. State*, No. 06-13-00089-CR, 2013 WL 5948108, at *1 (Tex. App.—Texarkana Nov. 5, 2013, no pet.) (mem. op., not designated for publication) (sustaining a conviction for unauthorized use of a vehicle even though, as appellant argued, "there was no testimony from anyone who saw [appellant] either enter or exit the truck, from anyone who actually observed him seated in the driver's seat of the truck, or from anyone who saw him operate or drive the truck").

Although there was no direct evidence that Downum operated the RV, the State established the following facts from which a rational trier of fact could infer operation: Pentland was the owner of the relevant property, including the house on lot two; Pentland was the owner of the RV and was in the hospital on the date of the unauthorized use; only Obuszewski had Pentland's permission to enter his houses or use his vehicles; the

10

keys to the RV were inside Pentland's home before he went to the hospital; Obuszewski called the police after hearing the television inside of Pentland's home, even though the night before he had checked the home and the television was off; a window on Pentland's home was broken and a doorknob had a hole drilled in it; when the police first arrived at the property, the RV was not parked between Pentland's home and the red house on lot three; the third time police responded to the property several hours later, the RV was parked between Pentland's home and the red house on lot three; Downum approached the officers and stated that the RV was his and that he was heir to all the property; the key to the RV was located in Downum's pocket; and Obuszewski denied moving any of Pentland's vehicles. We conclude that the circumstantial evidence in this case was sufficient to sustain a conviction for count two, including as to the element of operation. *See Nisbett*, 552 S.W.3d at 262; *Bailey*, 988 S.W.2d at 275; *Kirsch*, 366 S.W.3d at 868.

We overrule Downum's sole issue.

### III.  CONCLUSION

We affirm the trial court's judgment.

L. ARON PEÑA JR.
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
19th day of December, 2024.

11